*G. V. Howk* and *R. M. Weir*, for appellant.

———————◆———————

BLICKENSTAFF and Another *v.* PERRIN.

SLANDER.—PLEADING.—In an action of slander, matter in mitigation may be given in evidence under the general denial, and hence there is no available error in the sustaining of a demurrer to a plea in mitigation.

SAME.—EVIDENCE.—General rumors, or a general suspicion that the party is guilty of the act imputed by the alleged slanderous words, may be given in evidence in mitigation of damages, but evidence of mere reports, rumors or suspicions is not admissible.

SAME—The slanderous words are to be understood in their plain and natural sense, according to the meaning they are calculated to convey to those who hear them.

SAME.—CHARGE OF WHOREDOM.—The words, "A was a week in a whorehouse in L," spoken of a female, were held to imply a charge of whoredom.

VERDICT.—INTEREST ON.—Interest cannot be allowed on the amount of a verdict for the time intervening between the return of the verdict and the judgment.

APPEAL from the *Clinton* Circuit Court.

ELLIOTT, C. J.—This was an action by *Eliza Perrin*, the appellee, against *Joseph Blickenstaff* and *Mary*, his wife, for alleged slanderous words spoken by the latter of the plaintiff. Answer by a general denial, and trial by a jury, resulting in a finding for the plaintiff. The court overruled a motion for a new trial, and gave judgment on the finding.

The defendants, in mitigation of damages, set up in their answer "that at the time of the speaking, it was currently

reported in the neighborhood in which plaintiff lived, and in adjacent parts of the country, that plaintiff had been in a house of bad reputation, to-wit, a house of ill-fame, in the city of *Lafayette* in said State, which report had come to the ears of said defendant, *Mary Blickenstaff*, who, if she made any declaration, at all as alleged in the complaint, merely stated that she had heard so, without malice, and without any intention to injure the plaintiff, and which did not injure her in any respect whatever." To this answer the court sustained a demurrer. This ruling of the court is claimed to be erroneous. If it were so, we should not for that reason reverse the judgment, as all proper matters in mitigation may be given in evidence under the general denial, and the plaintiff, therefore, could have suffered no injury by the ruling of the court. It is provided by statute that in actions for libel or slander, "the defendant may allege the truth of the matter charged as defamatory, and mitigating circumstances to reduce the damages, and give either or both in evidence." 2 G. & H., § 87, p. 110. The statute, however, does not define what are proper matters in mitigation, but leaves it to be determined by the rules of the common law. It is well settled by repeated decisions in this State, that under the general denial the defendant cannot prove the truth of the matters charged, or give any evidence tending to prove the truth thereof, in mitigation of damages. General rumors, or a general suspicion that the party is guilty of the acts imputed, may be given in evidence in mitigation of damages, but evidence of mere reports, rumors, or suspicions is not admissible. The reason for the distinction is plain. If, before the speaking of the words complained of, there exists a general rumor or suspicion that the party is guilty of the criminal act charged against him, the character is already traduced, and the evidence is, in effect, the same as that of general bad character in reference to the crime imputed, which is only admissible when the charge has obtained general notoriety, and a

general belief or suspicion of its truth is entertained. It is the opinion of the community or neighborhood generally which constitutes general character, but the belief or suspicion of guilt entertained by a few, does not constitute general character. That may not be productive of injury, and is not admissible in evidence in mitigation. *Henson* v. *Veach,* 1 Blackf. 369; *Burke* v. *Miller,* 6 *id.* 155; *Sanders* v. *Johnson, id.* 50; *Kelly et ux.* v. *Dillon,* 5 Ind. 426. Here it is not alleged that the report referred to was general, nor that any belief or suspicion of its truth was entertained, even by those who heard it, and therefore it was not proper matter in mitigation. The evidence offered on the trial in reference to the same matter was even more objectionable than that stated in the answer, and, for the reasons above stated, was properly excluded.

The court overruled the appellants' motion for a new trial, which is complained of as being erroneous. One of the causes assigned for a new trial is, that "the verdict of the jury is not sustained by sufficient evidence." The complaint alleges that the defendant *Mary* charged the plaintiff with having been "a week in a whore-house in *Lafayette.*" The words were laid in different forms, with proper averments and a *colloquium,* to show that she thereby meant and intended to charge the plaintiff with whoredom. On the trial, the speaking of the words was proved by a single witness, *Mary Weitzel,* who testified that in a private conversation with the defendant *Mary Blickenstaff,* at the house of the defendant, *Mary* said that "*Eliza Perrin* was one week in *Lafayette* in a whore-house. *Joseph* (her husband) told me so." The witness further stated that they were not talking "about the plaintiff particularly." No question was asked her as to what she understood by the words spoken. It is argued by the appellants' counsel that the words laid in the complaint, and testified to by the witness, do not of themselves necessarily imply a charge of whoredom, and that to sustain the action, the evidence should have gone further

and shown that the words were spoken in a conversation in reference to the plaintiff's character for chastity, and were understood in a criminal sense. It is now well settled, in such cases, that words are to be understood in their plain and natural import, according to the ideas they are calculated to convey to those to whom they are addressed. In ascertaining the meaning of the speaker, reference must be had to the words used and the circumstances under which they are uttered, and the author is presumed to have used them in the sense which their use is calculated to convey to the minds of the hearers. *Harrison* v. *Findley*, 23 Ind. 265; *Rodgers* v. *Lacey*, *id.* 507; *O'Connor* v. *O'Conner*, 24 *id.* 218. Here, we think the words proved to have been used, convey to the mind the charge that the plaintiff was guilty of whoredom, and would ordinarily be so understood, although they are susceptible of a different construction. It was the province of the jury to determine the sense in which they were spoken, and having done so, we cannot disturb their verdict.

In a late edition of Starkie on Slander, after a review of the *English* cases on this question, the following propositions are stated as the result: "1. That where words are capable of two constructions, in what sense they were meant is a matter of fact to be decided by the jury. 2. That they are to be guided in forming their opinion by the impression which the words or signs used were calculated to make on the minds of those who heard or saw them, as collected from the whole of the circumstances. 3. That such words or signs will, after a verdict for the plaintiff, be considered by the court to have been used in the worst sense." To the first of these propositions, the following cases are cited: *Van Vechten* v. *Hopkins*, 5 Johns. 211; *Dexter* v. *Taber*, 12 *id.* 238; *McKinly* v. *Rob*, 20 *id.* 351; *Gorham* v. *Ives*, 2 Wend. 534; *Gibson* v. *Williams*, 4 *id.* 320.

The jury assessed the plaintiff's damages at $350, which is complained of as excessive. We think otherwise. There

was no error in overruling the motion in arrest. The complaint is clearly good.

The verdict was rendered at the *April* term of the court, in 1864. The judgment was rendered at the succeeding term, in *October*, and interest was computed on the verdict from the date thereof to the date of the judgment, and judgment was rendered for $360 50, being $10 50 in excess of the verdict. This, we think, was an error. The recovery was not on a claim bearing interest. The statute does not authorize interest on verdicts, and we are not aware of any authority allowing interest in such cases before judgment.

If the appellee, within sixty days from the date of filing this opinion, shall remit $10 50 of said judgment, the judgment for the residue will be affirmed at the costs of the appellee, otherwise it will be reversed, with costs, and the cause remanded, with instructions to the court below to render judgment for the amount of the verdict.

*R. P. Davidson*, for appellants.

*J. N. Sims*, for appellee.