Gerald MEIER, doing business as
Grafton Paint & Glass, Plaintiff
and Appellee,

v.

Vivian NOVAK, Defendant
and Appellant.

Civ. No. 10439.

Supreme Court of North Dakota.

Sept. 30, 1983.

As Changed Dec. 21, 1983.

Lawrence D. DuBois (argued), of Fleming & DuBois, Cavalier, for defendant and appellant.

Daniel J. Crothers (argued), of DePuy, Kopperud, Goulet & Hall, Grafton, for plaintiff and appellee.

WM. L. PAULSON, Surrogate Justice.

This is an appeal by the defendant, Vivian Novak, from a judgment of the District Court of Walsh County entered in favor of the plaintiff, Gerald Meier, in the amount of $63.64. We affirm.

The defendant, Vivian Novak [Novak], contracted with B & K Roofing Company to repair damage to his house which had been sustained in a hailstorm in June of 1980. Because Novak's windows had also been damaged, B & K brought them for repair to the place of business of the plaintiff, Gerald Meier [Meier], i.e., the Grafton Glass & Paint Company. Meier repaired the windows and returned them to B & K, who reinstalled them in the Novak house.

Novak, however, was dissatisfied with the overall work done by B & K and refused to pay for the repairs. When Meier contacted B & K for payment, he was informed that B & K would pay Meier when Novak paid B & K. Novak and B & K subsequently settled their differences with Novak paying nothing for the work done by B & K. Meier, however, never received payment for repair of the windows. When it became evident that B & K was insolvent and would not pay Meier's bill, he contacted Novak regarding payment of the debt.

Meier contacted Novak approximately four times during the remainder of 1980 regarding payment of the debt. The final two contacts were telephone conversations during which Meier alleges that Novak promised to pay the bill. Novak admitted that the conversations took place but denied promising to pay.

On August 31, 1982, Meier entered A & H Implement, where Novak was employed as parts manager. Testimony indicated that there were at least two customers and two of Novak's co-workers present at the time. In his testimony, Novak described what happened at that time:

"Q: What happened when Mr. Meier came in?

"A: He came in. He was in a hurry it seemed like. I know I looked up at him. He said 'You forgot about this.' That is the words he used. I said, 'What do you mean, I forgot about this?' He says, 'You mean to tell me you want to be an asshole about this deal?' I said, 'Wait a minute,' I said, 'I want to see the bill,' because I had never seen the bill before.

"Q: Did Mr. Meier continue?

"A: Yes, 'I will show it to you and I have got it out in the pickup,' and he went to his pickup.

"Q: What did you do then?

"A: I excused myself from the counter, and I believe Leland [a co-worker] was helping with the customers there too, and I walked from behind the counter to the front door and waited for Mr. Meier to bring me the bill.

"Q: At that point you went out of hearing of the customers?

"A: Right.

"Q: What did he do?

"A: He showed—the bill he showed me was a copy and it said, 'B & K Roofing Company' and that was scratched out and my name was put directly on top, 'Vivian C. Novak.'

"Q: What did you do?

"A: I told him at that time that was not my bill.

"Q: Then what happened?

"A: He left."

Following this incident, Meier began an action in Small Claims Court to recover the cost of repairing the windows. Novak counterclaimed for slander and asked damages in excess of $1,000. He also removed

the action to district court. After trial to the court, the trial judge issued the following findings of fact from the bench:

"I find that with regard to the complaint or claim, as it is designated in Small Claims Court that, since I am satisfied at this point it has to be a District Court action, I have to make findings. And I will find that the B & K Roofing did bring in for repair the windows and I will find that the windows were, in fact, returned to B & K and used by Mr. Novak. I find that a demand was made to pay the bill although there was not a bill sent to him as such, and that there was a promise to pay twice made by Mr. Novak.

"I find that Mr. Novak is obligated to pay for the windows the sum claimed and Judgment is so ordered.

"With regard to the counterclaim, I find that the words used by Mr. Meier are not actionable per se, and in the context in which they were used and the results which have been proved, those words do not constitute civil slander as defined by 14–02–04 of the Century Code."

Novak does not challenge the findings of fact.[1] Two issues are presented for review: (1) Did the district court err as a matter of law in awarding compensatory damages for repair of the windows; and (2) Did the court err in determining that the statements of Meier did not constitute slander per se?[2]

## I

■ Novak's first contention in regard to the award of compensatory damages is that he is not personally liable for the cost of repairs, but rather Meier's proper remedy is a mechanic's lien on his property. In *Meagher v. Quale,* 77 N.W.2d 878 (N.D. 1956), we held that a mechanic's lien claimant may bring a personal action against the owner for a debt as a cumulative remedy without waiving his right to a lien. Such actions are not identical and neither the pursuit of one of the available remedies nor the failure to pursue one will bar an action on the other. *Id.* at 881.

Novak further contends, however, that he is not personally liable for the debt because there was no privity of contract between him and Meier.

The district court did not state the legal theory on which its conclusion of liability was predicated. The facts, however, support a determination of liability based upon an agency theory.

An agency is "the relationship which results where one person, called the principal, authorizes another, called the agent, to act for him in dealing with third persons".

---

1. Appellant also raised, for the first time at oral argument, the issue of whether or not there was sufficient evidence to support the judge's findings of fact. Findings of fact made by the trial judge will not be disturbed unless clearly erroneous. Rule 52(a) of the North Dakota Rules of Civil Procedure. Upon review of the record in this case we conclude that the judge's determination was not "clearly erroneous".

2. Due in large part to the fact that this action first arose in Small Claims Court, the record is somewhat confusing and lacking in the formality and specificity normally required for adequate review.

Following Novak's removal of the case to district court, considerable confusion regarding the court's jurisdiction to hear the slander counterclaim became apparent. Initially, the district judge proceeded on the theory that the case was to proceed under the informal requirements of the Small Claims Act. § 27–08.-1–03, N.D.C.C. The defendant, however, contended that removal guaranteed to him the more formal procedural protections afforded by the North Dakota Rules of Civil Procedure and the North Dakota Rules of Evidence. The judge ultimately determined that the action would proceed as a district court case and that there was jurisdiction over the counterclaim.

The issue of the jurisdiction of the district court over Novak's counterclaim has not been raised on appeal. We recognize that we may nevertheless raise the issue *sua sponte.* We decline, however, to do so in the absence of the thorough briefing of the issue by the parties.

We do, however, note that the Act provides no substantial guidance for determination of the procedural effect of a removal from Small Claims Court. The stated purpose of the provision for removal is to preserve for the defendant his right to appeal. The other procedural protections which are normally available in district court (*e.g.,* trial by jury, discovery, rules of evidence, etc.) are not specifically provided by the Act.

§ 3–01–01, North Dakota Century Code. The agency relationship "may be created and an authority may be conferred by a prior authorization or a subsequent ratification". § 3–01–06, N.D.C.C. Section 3–01–08, N.D.C.C., provides:

"*Ratification of agency—How made—Extent.*—A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified or, when an oral authorization would suffice, by accepting or retaining the benefit of the act with notice thereof. A ratification is not valid unless at the time of ratifying the act done the principal has power to confer authority for such an act, and ratification of part of an indivisible transaction is a ratification of the whole."

The Restatement of Agency 2d § 82 (1958), page 210, defines "ratification" as:

"The affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

In *Askew v. Joachim Memorial Home,* 234 N.W.2d 226, 237 (N.D.1975), we stated that:

"The ratification of an unauthorized act may occur either expressly, or by implication because of conduct by the principal which is inconsistent with an intention to repudiate the agent's action."

Further, in *Farmers Union Oil Company of Dickinson v. Wood,* 301 N.W.2d 129, 135 (N.D.1980), we stated that:

"Ratification carries the connotation that the act was done or purported to be done for a person who acquired no rights or liabilities because of it, except the right to elect to become a party to it."

*See also* Restatement of Agency 2d § 93 (1958), page 240.

█ It is unnecessary to determine whether B & K was an agent with the power to bind Novak to a contract with Meier. The facts as found by the court and other undisputed testimony gleaned from the record show that B & K brought the windows in for repair on behalf of Novak; that fact was communicated to Meier when they were picked up; Novak promised to pay for the repairs and he retained the benefits of the contract made on his behalf. Novak thereby ratified B & K's actions on his behalf and is therefore liable on the contract.

## II

Novak's second contention is that the words spoken by Meier constitute civil slander as defined by § 14–02–04, N.D.C.C., which section provides as follows:

" *'Civil slander' defined.* Slander is a false and unprivileged publication other than libel, which:

"1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;

"2. Imputes to him the present existence of an infectious, contagious, or loathsome disease;

"3. Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualifications in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

"4. Imputes to him impotence or want of chastity; or

"5. By natural consequence causes actual damage."

The trial court made no specific finding of fact as to the precise statement made by Meier during the August 31, 1982, incident. For purposes of our review, however, we will assume that Novak's testimony was an accurate statement of what was said.

Novak argues that the words spoken implied a general disqualification in one of the required attributes of his trade. He contends that, as a parts manager, credit is a very important part of his trade and that his customers rely on his honesty and integrity in their business dealings. Novak further contends that the words spoken by

Meier struck at the foundations of his qualification for his job by attacking his business honesty and character and, as such, constitute civil slander as defined in subsection 3 of § 14–02–04, N.D.C.C.

■ The only part of Meier's alleged statement which might support Novak's contention is that portion which charges Novak with not having paid a bill. Novak himself testified that the conversation was in reference to a particular unpaid bill. The statement contained no imputation that Novak habitually failed to pay his debts. In addition, the debt at issue was, in fact, owed by Novak and he had refused to pay it. In order to be slanderous, a statement must first be false. § 14–02–04, N.D.C.C. The content of Meier's alleged statement which alleges that Novak had not paid his debt was therefore true and not slanderous.

■ Novak also contends that Meier's use of the word "asshole" was slanderous.

In *McGuire v. Jankiewicz,* 8 Ill.App.3d 319, 290 N.E.2d 675, (1972), plaintiff was an attorney and defendant was an insurance agent who told plaintiff's client that "your lawyer is an ass hole". In holding that calling the attorney an "ass hole" was not slander, the Illinois Court in *McGuire* stated as follows:

> "Where the words amount to mere epithets or 'name-calling' and do not impute a want of integrity or capacity in the legal profession they are not actionable as being defamatory. [Citation omitted.]
>
> "Turning then to the words used in the instant case [*McGuire*], it is readily apparent that the statement 'your lawyer is an ass hole' is merely an example of objectionable but unactionable 'name-calling'." *Id.* 290 N.E.2d at 676.

In *Bartow v. Smith,* 149 Ohio 301, 78 N.E.2d 735, 737 (1948), the Ohio Court, under similar facts, stated:

> "It is axiomatic that opprobrious epithets, even if malicious, profane, and in public, are ordinarily not actionable. There is no right to recover for bad manners."

In 50 Am.Jur.2d *Libel and Slander* § 20, page 532, it is stated that:

> "Words that are merely insulting are not actionable as libel or slander, and mere words of general abuse, however opprobrious, ill-natured, or vexatious, whether written or spoken, do not constitute a basis for an action for defamation in the absence of an allegation of special damages."

In the instant case special damages were neither alleged nor proved. In and of itself the word complained of imputes no characteristic, habit, or condition which would fall within the definition of slander contained in our statute. The surrounding circumstances offer no further support for the defendant's claim of damage due to the incident. While such language is no doubt ill-mannered, rude, and objectionable in the extreme, especially when used in public, it does not constitute a basis for a cause of action for slander in this setting. To hold otherwise would open our courts to a flood of litigation of a similar nature.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.