George RAMBO, Appellant–Plaintiff,

v.

Edward L. COHEN [1] and State
of Indiana, Appellees–
Defendants.

No. 30A01–9106–CV–195.

Court of Appeals of Indiana,
First District.

Feb. 26, 1992.

Rehearing Denied April 7, 1992.

**1.** Although the parties have spelled the defendant's name "Cohen," the record reveals "Cohn" is the proper spelling.

Steven C. Smith, Anderson, for appellant-plaintiff.

Linley E. Pearson, Atty. Gen., Michael A. Schoening, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees-defendants.

BAKER, Judge.

Plaintiff-appellant George Rambo, a water treatment technician at the Pendleton Reformatory, initiated this defamation action against then Pendleton Superintendent Edward Cohn and the State of Indiana. The trial court dismissed the action due to Rambo's failure to exhaust administrative remedies under the Administrative Adjudication Act [2] (AAA) and then granted summary judgment to the defendants on the basis of immunity under the Indiana Tort Claims Act (ITCA).[3]

We reverse the dismissal and affirm the summary judgment.[4]

## FACTS

Rambo has been an employee of the Indiana Department of Correction at the Pendleton Reformatory for over 30 years. Prior to 1989, he accumulated a large surplus of vacation days. In 1988, the Department of Correction instituted a policy requiring employees to reduce their accumulated vacation time to a maximum of 75 days.

Rambo was, and is, reluctant to take vacation days; he instituted an administrative review challenging the propriety of the vacation policy. Nonetheless, after a great deal of haranguing, Rambo agreed to take a 61 day vacation beginning January 3, 1989. The unusually long vacation required approval not only from Superintendent Cohn, but also from the Commissioner of the Department of Correction and the Director of State Personnel.

Instead of going to Florida as planned, however, Rambo appeared for work on January 3, 1989. He offered his daughter's changed wedding date and the pending status of his administrative challenge as justification. The record reveals Rambo had difficulty understanding the difference between changing his departure date for Florida, a matter solely of Rambo's concern, and changing the commencement date of his time away from work, a matter of demonstrated institutional interest. When Superintendent Cohn learned of Rambo's presence, he summoned Rambo to his office for a meeting. Four people attended the meeting: Pendleton's physical plant director, who is Rambo's immediate supervisor, Pendleton's personnel director, Rambo, and Cohn. The facts most favorable to Rambo reveal Cohn made three statements to which Rambo objects. First, Cohn told Rambo he was a "lazy," "trouble-causing," "stupid," and "arrogant" employee. *Record* at 93. Second, Cohn told Rambo to stop acting like a "horse's butt." *Record* at 93. Third, he said Rambo was "anti-Semitic." *Record* at 93.

The next day, Cohn memorialized the meeting in a letter to Rambo with copies to the other people at the meeting. The letter, however, contains none of the allegedly defamatory remarks made at the meeting. In the end, no disciplinary action was taken against Rambo for his failure to comply with the vacation policy, and he continues in his job as before.

Apparently, however, Rambo has become a depressed and nervous man in the wake of Cohn's remarks and has spent a great deal of time in professional counseling. He now seeks recovery for impotence, shingles, urinary difficulties, bills for medical and psychological assistance, and lost work stemming from emotional distress.

## DISCUSSION AND DECISION

### I. EXHAUSTION

Our initial task is to resolve the inconsistency between the trial court's dismissal of Rambo's complaint for failure to

---

**2.** IND.CODE 4–21.5–1–1 *et seq.*

**3.** IND.CODE 34–4–16.5–1 *et seq.*

**4.** Rambo's complaint also states a cause of action under 42 U.S.C. § 1983. Rambo made no argument to the trial court or this court, however, concerning his claims under § 1983, and he has therefore waived any such claims. Ind.Trial Rule 56(H); Ind.Appellate Rule 8.3(A)(7).

exhaust administrative remedies and the subsequent summary judgment entered for the defendants. Judicial review of agency actions is achieved exclusively through compliance with the procedures of the AAA. IND.CODE 4–21.5–5–1. Generally, the failure to exhaust administrative remedies waives the right to judicial review. IND.CODE 4–21.5–5–4. Indeed, until a party has exhausted available administrative remedies, the courts cannot exercise subject matter jurisdiction over the party's claim, and the action is subject to dismissal. *United States Auto Club, Inc. v. Woodward* (1984), Ind.App., 460 N.E.2d 1255, 1258, *trans. denied; Bowen v. Sonnenburg* (1980), Ind.App., 411 N.E.2d 390, 403. Thus, if a party wrongly fails to exhaust administrative remedies, the trial court's sole prerogative is to dismiss the complaint; it cannot enter summary judgment or take any other action. *See Harlan Sprague Dawley, Inc. v. Indiana Dep't of Revenue* (1991), Ind.Tax, 583 N.E.2d 214. If a State employee has a grievance concerning conditions of employment, IND.CODE 4–15–2–35 requires adherence to established administrative procedures under the State Personnel Administration Act [5] to obtain relief. *Spencer v. State* (1988), Ind.App., 520 N.E.2d 106, 108, *trans. denied.* There are exceptions to the general rule, however.

■ If administrative procedures are incapable of "answering the question presented" by a party's claim, exhaustion is not required. *Indiana Dep't of Pub. Welfare v. Chair Lance Service, Inc.* (1988), Ind., 523 N.E.2d 1373, 1379. In *Shallenberger v. Scoggins-Tomlinson, Inc.* (1982), Ind.App., 439 N.E.2d 699, the plaintiff realtor brought a defamation action against another realtor and the members of the local realtors' board. The board had an established grievance procedure, and although the plaintiff's failure to exhaust the administrative remedies afforded by the grievance procedure prevented him from attacking the board's decision making process, the failure to exhaust did not prevent him from proceeding with his defamation suit. The summary judgment

in favor of the board members was affirmed, not because the plaintiff failed to exhaust his remedies, but because the board's written statements about the plaintiff were not defamatory. *Id.* at 705–06.

■ Similarly, Rambo's complaint in the present case alleges libel and slander; he does not seek relief from an unsatisfactory condition of employment or an involuntary change in his status of employment as contemplated by IND.CODE 4–15–2–35. Quite simply, the administrative review process is incapable of providing a remedy for Rambo's complaint. The State Employees Appeals Commission, the ultimate agency authority for state personnel grievances, is not empowered to award damages for defamation. *See* IND.CODE 4–15–1.5–6. When the character of the question presented is beyond the pale of the agency's competency, expertise, and authority, failure to exhaust will be excused. *See Wilson v. Board of Indiana Employment Sec. Div.* (1979), 270 Ind. 302, 385 N.E.2d 438, *cert. denied* (1979), 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101; *Spencer, supra; Indiana Dep't of Welfare v. Stagner* (1980), Ind.App., 410 N.E.2d 1348, 1351.

The trial court had subject matter jurisdiction over Rambo's claim and therefore erred in dismissing Rambo's complaint.

## II. SUMMARY JUDGMENT

### A. *Standard of Review*

■ After erroneously dismissing Rambo's complaint, the trial court granted summary judgment to the defendants. Summary judgment is appropriate only when no genuine issues of material fact exist. *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305. When reviewing the disposition of a summary judgment motion, we stand in the same position as the trial court, and review all evidence in the light most favorable to the non-movant. *Forrest v. Gilley* (1991), Ind.App., 570 N.E.2d 934, 935, *trans. denied.* Once the movant has demonstrated no genuine issue of material fact exists, the non-movant may not rest on pleadings, but must set forth

---

**5.** IND.CODE 4–15–1–1 *et seq.*

specific facts showing a genuine issue does exist and that a trial is therefore warranted. *Tucher v. Brothers Auto Salvage Yard, Inc.* (1991), Ind.App., 564 N.E.2d 560, 563, *trans. denied.* When the defendant is the movant, the defendant must either show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense which bars the plaintiff's claim. *Moore, supra,* at 1307. If no genuine issue of material fact exists, we will affirm a summary judgment on any legal theory supported by the record. *Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320.

### B. *Defamation*

▮▮▮▮ To maintain an action for defamation, a plaintiff must show a communication with defamatory imputation, malice, publication, and damages. *Shallenberger, supra,* at 704. Defamatory communications are those which tend to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person. *Chestnet v. K-Mart Corp.* (1988), Ind.App., 529 N.E.2d 131, 135, *trans. dismissed.* Initially, the determination of whether a communication is defamatory is a question of law for the court; it is to be presented to the jury as a question of fact only if the communication is reasonably susceptible to either defamatory or non-defamatory interpretation. *Id.* In making the determination, the communication is to be viewed in context and given its plain and natural meaning, "according to the idea they are calculated to convey to whom [it is] addressed." *Jacobs v. City of Columbus* (1983), Ind.App., 454 N.E.2d 1253, 1264, *trans. denied. See also Martin v. Indiana Bell Tel. Co., Inc.* (1981), Ind.App., 415 N.E.2d 759. *Accord, Rybas v. Wapner* (1983), 311 Pa.Super. 50, 54–55,

457 A.2d 108, 110 ("The test is the effect the statement would fairly produce, or the impression it would naturally engender, 'in the minds of the average persons among whom it is intended to circulate.' "). Moreover, the allegedly defamatory words are to be construed in light of the circumstances of their utterance. *Blickenstaff v. Perrin* (1867), 27 Ind. 527.

▮▮▮▮ A communication may be defamatory *per se* or *per quod.* In the case of slander,[6] a communication is defamatory *per se* under well-settled common law rulings if it imputes: 1) criminal conduct; 2) a loathsome disease; 3) misconduct in a person's trade, profession, office, or occupation, or; 4) sexual misconduct. Restatement (Second) of Torts § 570 (1977); 18 I.L.E. *Libel and Slander* § 21 (1959);[7] *Gabe v. McGinnis* (1879), 68 Ind. 538.[8] *See also State v. Killigrew* (1931), 202 Ind. 397, 174 N.E. 808 (criminal conduct); *Monks v. Monks* (1888), 118 Ind. 238, 20 N.E. 744 (loathsome disease); *Young v. Clegg* (1884), 93 Ind. 371 (public office); *Chestnet, supra,* (criminal conduct); *Erdman v. White* (1980), Ind.App., 411 N.E.2d 653 (profession or trade); *Spry v. Corum* (1928), 88 Ind.App., 122, 163 N.E. 526 (sexual misconduct). If a communication is defamatory *per se,* the plaintiff is entitled to presumed damages "as the natural and probable consequence[ ]" of the *per se* defamation. *Elliott v. Roach* (1980), Ind.App., 409 N.E.2d 661, 683. The law presumes the plaintiff's reputation has been damaged, and the jury may award a substantial sum for this presumed harm, even without proof of actual harm. *Id.* (citing *Aafco Heating & Air Conditioning Co. v. Northwest Publications, Inc.* (1974), 162 Ind. App. 671, 684, n. 8, 321 N.E.2d 580, 589, n. 8, *cert. denied,* (1976), 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318). In addition,

---

**6.** Rambo has not pursued his libel claim beyond the use of the word "libel" in his complaint. Any libel claim is therefore waived. *See* note 3, *supra.*

**7.** Without citation, this section also mentions the imputation of actions that would cause a person to be disinherited as defamatory *per se.*

**8.** The ancient rule concerning sexual misconduct referred only to women. *See* W. Prosser and W. Keeton, *Prosser and Keeton on Torts,* § 112, p. 793 (5th ed. 3rd printing 1989). In Indiana, however, the *per se* defamatory nature of such charges applies equally to men and women. IND.CODE 34–1–62–1.

the plaintiff, upon proper proof, is entitled to special damages, i.e., damages, generally pecuniary in nature, which are consequential to the defamation. *Id.  See also Stanley v. Kelley* (1981), Ind.App., 422 N.E.2d 663 (discussing presumed and special damages).

All other factual communications, even if they are defamatory in that they tend to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person, *Chestnet, supra,* are, at most, defamatory *per quod.* This latter type of defamation is actionable, if at all, only if it causes the plaintiff special damages. *See Jacobs, supra,* at 1264; W. Prosser and W. Keeton, *Prosser and Keeton on Torts,* § 112, p. 793 (5th ed. 3rd printing 1989); Restatement (Second) of Torts § 575 (1977). *Accord, Ceravolo v. Brown* (1978), Ala., 364 So.2d 1155; *Moricoli v. Schwartz* (1977), 46 Ill.App.3d 481, 5 Ill.Dec. 74, 361 N.E.2d 74; *Gomez v. Hug* (1982), 7 Kan.App.2d 603, 645 P.2d 916; *Bradshaw v. Swagerty* (1977), 1 Kan.App.2d 213, 563 P.2d 511; *Sampson v. Rumsey* (1977), 1 Kan.App.2d 191, 563 P.2d 506; *Scott v. Harrison* (1939), 215 N.C. 427, 2 S.E.2d 1; *Meier v. Novak* (1983), N.D., 338 N.W.2d 631; *Braugh v. Enyart* (1983), Tex.App., 658 S.W.2d 221, *error refused n.r.e.*[9]

In either a *per se* or a *per quod* defamation action, however, the plaintiff may recover for emotional or physical harm only upon proof of the predicate case. The gravamen of a defamation action is harm to the plaintiff's reputation in the eyes of others. *Marczak v. Drexel* (1989), 186 Ill. App.3d 640, 644, 134 Ill.Dec. 441, 443, 542 N.E.2d 787, 789. Accordingly, a plaintiff in

a *per se* defamation action can recover for emotional distress or bodily harm only upon proof the communication is indeed *per se* defamatory and therefore, the cause of presumed damages. That is, if the judge or jury decides the communication is not *per se* defamatory, the plaintiff's claim for emotional and physical damages will fail along with the predicate case. W. Prosser and W. Keeton, *Prosser and Keeton on Torts,* § 112, p. 794 (5th ed. 3rd printing 1989); Restatement (Second) of Torts § 623 (1977).

Similarly, a plaintiff in a *per quod* defamation action can recover for emotional and physical harm only upon a showing of special damages, Restatement (Second) of Torts § 623 (1977); W. Prosser and W. Keeton, *Prosser and Keeton on Torts,* § 112, p. 794 (5th ed. 3rd printing 1989). Emotional and physical harms are not special damages unto themselves, but rather are parasitic damages, viable only when attached to normal (i.e., pecuniary) special damages. *Id.;* C.J.S. *Libel and Slander* § 191 (1987); *Scott, supra,* 215 N.C. at 430–31, 2 S.E.2d at 3. *See also Bradshaw, supra,* 1 Kan.App.2d at 214–15, 563 P.2d at 513 (in addition to loss of reputation, plaintiff pleaded humiliation and embarrassment; because the alleged slander was not defamatory *per se,* no reputational harm was recoverable, and the humiliation and embarrassment did not constitute special damages). The parasitic damages ride along with special damages; if special damages are alleged and proved, recovery for parasitic damages is possible; if special damages are not alleged and proved, there can be no recovery for the parasitic damages.[10]

---

**9.** Thus, it is defamatory *per se* to accuse a physician of killing his or her patients, *Depew v. Robinson* (1883), 95 Ind. 109, but it is not defamatory *per se* to allege a physician wrote and posted a threatening note in public view, *Divens v. Meredith* (1897), 147 Ind. 693, 47 N.E. 143, because the latter allegation does not attack the physician as a physician.

**10.** Our supreme court's recent decisions in *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452 and *Cullison v. Medley* (1991), Ind., 570 N.E.2d 27 reflect the same idea. In *Cullison,* the court

abolished the "impact rule" for cases of tortious trespass and provided the possibility of recovery for emotional distress in such cases without a showing of physical injury. In *Shuamber,* after remarking that the *Cullison* decision included intentional torts other than trespass, the court held that plaintiffs who sustain a direct impact as a result of another's negligence can recover for emotional distress, "without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff." *Id.* at 456.

We turn now to the specific allegations of Rambo's action.

### 1. Remarks alleging incompetence as an employee

■ As we have already noted, Rambo alleges Cohn, in the presence of Rambo's supervisor and Pendleton's personnel chief, called Rambo a lazy, trouble-causing, stupid, and arrogant employee.[11] Rambo cannot recover for these remarks.

In an opinion authored by Judge Staton, this court recently adopted the majority American rule that no publication occurs when statements about an employee are communicated by a supervisor or employer only to other company personnel with an interest in the statement. *Bals v. Verduzco* (1990), Ind.App., 564 N.E.2d 307. Here, regardless of the nature of Cohn's remarks about Rambo's performance, the only third parties who heard them were Rambo's supervisor and the head of the personnel department. Because both of these people had an interest in Superintendent Cohn's remarks about Rambo's performance, there was no publication, and hence, no liability.[12]

■ Even if the remarks were untrue, defamatory, and published, however, there would nonetheless be no liability. Under ITCA, Superintendent Cohn was immune from liability for actions, undertaken in the scope of his employment, to enforce rules and regulations. IND.CODE 34-4-16.5-3(7); *Indiana Dep't of Correction v. Stagg* (1990), Ind.App., 556 N.E.2d 1338, *trans. denied.* The vacation policy Cohn was trying to enforce during the meeting with Rambo was an official Department of Correction policy, and Cohn is therefore absolutely immune to Rambo's suit for the remarks about Rambo's performance as an employee.

The trial court properly granted the defense motion for summary judgment for Cohn's remarks about Rambo's performance as an employee. Cohn's other remarks, calling Rambo a "horse's butt" and "anti-Semitic," likewise lead to no liability, but for different reasons.[13]

### 2. Horse's Butt and Anti-Semitic

■ It is well-settled throughout this country that obnoxious remarks, even remarks much more obnoxious than those Cohn is alleged to have made here, are not defamatory *per se*, and will not lead to liability without proof of special damages. *See, e.g., Raible v. Newsweek, Inc.* (W.D.Pa.1972), 341 F.Supp. 804, 807 ("to call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic or sociological philosophies gives no rise to an action for libel"); *Ceravolo, supra* ("dead beat" and "crook");

society's tolerance for verbally abusive angry outbursts, as reflected in Comment e of *Restatement (Second) of Torts*, § 566 (1977).

11. At first blush, these remarks present the question of whether Cohn was stating facts or opinion. Although whether a communication is a statement of fact or opinion is a question of law, *Near East Side Community Organization v. Hair* (1990), Ind.App., 555 N.E.2d 1324, 1328 (citing *Jamerson v. Anderson Newspapers, Inc.* (1984), Ind.App., 469 N.E.2d 1243), we need not reach the issue here because Rambo, as will be discussed, cannot recover for any defamatory remarks made against him in his capacity as an employee in the present context.

The Colorado Supreme Court's decision in *Bucher v. Roberts* (1979), 198 Colo. 1, 595 P.2d 239, provides a thoughtful discussion of an employer's First Amendment protection in commenting on an employee's performance, and of

Thus, although the impact rule no longer exists for intentional torts, Indiana still requires a predicate tort, such as defamation, before a plaintiff can recover for emotional distress, and if a defamation plaintiff cannot prove the elements of either *per se* or *per quod* defamation, there can be no recovery for emotional distress.

12. Judge Hoffman impliedly stated the same result in his opinion for the court in *Kolczynski v. Maxton Motors, Inc.* (1989), Ind.App., 538 N.E.2d 275, *trans. denied.*

13. We are aware of no Department of Correction policy, or of any executive, legislative, or judicial policy in this state which would authorize state supervisory employees, in the course of their employment as defined ITCA, to hurl personal and ethnic insults at their subordinates.

Moreover, the phrases "horse's butt" and "anti-Semitic," although uttered in a heated conversation stemming from a work-related dispute, are themselves unrelated to Rambo's performance as an employee. Thus, these phrases do not fall within the rule adopted in *Bals, supra,* and were therefore published to Rambo's supervisor and the Pendleton personnel chief.

*Moriarty v. Lippe* (1972), 162 Conn. 371, 294 A.2d 326 (defendant called plaintiff police officer a "clown," "big fat ape," "smart aleck," "big fat oaf," and a "stupid son of a bitch"); *McGuire v. Jankiewicz* (1972), 8 Ill.App.3d 319, 290 N.E.2d 675 (defendant insurance agent told plaintiff attorney's client that plaintiff was an asshole); *Gomez, supra* ("fucking Mexican greaser" and "fucking spic"); *Bradshaw, supra* ("nigger" and "bastard"); *Sampson, supra* ("son of a bitch"); *Ferilito v. Cecola* (1982), La.App., 419 So.2d 102, 105, *writ denied,* 422 So.2d 157 ("[p]rofane language, although disgusting and uncouth, is not defamatory per se."); *Harris v. Levy* (1977), La.App., 353 So.2d 1065 ("son of a bitch"); *Hansen v. Dethridge* (1946), N.Y. City Ct., 67 N.Y.S.2d 168;[14] *Ledsinger v. Burmeister* (1982), 114 Mich.App. 12, 318 N.W.2d 558 ("nigger"); *Milner Hotels v. Dougherty* (1943), 195 Miss. 718, 15 So.2d 358 ("God damn son of a bitch" and "damn liar"); *Meier, supra* ("asshole"); *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 453 N.E.2d 666 ("Little Hitler"); *Rybas, supra* (tenant's attorney wrote letter to landlord's attorney, calling landlord anti-Semitic). In light of these cases, we hold Cohn's use of the relatively mild phrase "horse's butt" was merely obnoxious language which the law tolerates as an expression of free speech in a free society. The phrase "anti-Semitic," however, requires some further analysis.

▮ As we stated earlier, the determination of whether a statement is defamatory or not is to be made in light of all the circumstances surrounding its utterance. *Blickenstaff, supra.* The *Rybas* decision, in which the Pennsylvania court held the phrase "anti-Semitic" not to be defamatory *per se,* makes clear the circumstances surrounding an utterance include the nature and extent of the audience receiving the publication and the nature of the times in which the utterance is made. In *Beamer v. Nishiki* (1983), 66 Haw. 572, 670 P.2d 1264, the court stated the determination "depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place." *Id.* at 580, 670 P.2d at 1271 (quoting *Schermerhorn v. Rosenberg* (1980), 73 A.D.2d 276, 284, 426 N.Y.S.2d 274, 282).

▮ Here, the audience was comprised of only two people, both of whom were intimately involved in Rambo's continuing administrative struggle over the vacations policy. We fail to see how Cohn's angry remarks could deter these two people from associating with Rambo. *Chestnet, supra; see also Rybas, supra,* 311 Pa.Super. at 56, 457 A.2d at 111. Moreover, we are concerned here solely with the analysis of whether Cohn's remarks could be defamatory *per se.* We do not question that a charge of being anti-Semitic could be defamatory *per quod* given proof of special damages,[15] but Rambo has not attempted to make a *per quod* case.

In addition, the cases finding allegations of anti-Semitism and the related allegations

**14.** In *Hansen,* the City Court of New York eloquently stated that:

> [e]pithets of the character which form the basis of this complaint for libel and slander, while malodorous and unesthetic, are colloquialisms largely indulged in by the general citizenry in the heat of discussion or controversy. It would be an infringement of the right of free speech to restrict the average citizen to the use of esthetic language and limit the right of pungent description of distasteful personalities or opinions. While the line of demarcation between slander and permissive descriptive adjectives may be thin, the Court is of the opinion that the words complained of in the instant case come within the latter category. No special damages are averred in the complaint nor does it allege any special innuendos recognized by those who heard the language employed. The Court, moreover, will not set itself up as a censor of the linguistic mores of the community. The reason for such reluctance will readily be apparent to any one who frequents our places of recreation such as ball parks and boxing exhibitions. Wounded sensibilities are not actionable per se, and while the sensibilities of the plaintiff have undoubtedly been outraged, the Court is without power to give redress.

> *Id.* at 168–69.

**15.** For example, if Rambo were a meat supplier with Kosher customers, a charge of anti-Semitism leading to loss of Kosher business could easily support a *per quod* defamation action.

of being a "Naziphile" or a "Quisling"[16] to be defamatory *per se* all arose in the 1940s, when an allegation of anti-Semitism was tantamount to an allegation of sympathy with Nazi Germany. In those days, when almost every American family had some involvement with the war against Nazi Germany and its allies, an allegation of sympathy with the enemy could easily destroy a person. *See Sweeney v. Schenectady Union Publishing Co.* (2nd Cir.1941), 122 F.2d 288, 290–91, *aff'd without opinion* by an equally divided Court with Justice Jackson not participating, 316 U.S. 642, 62 S.Ct. 1031, 86 L.Ed. 1727 (mentioning the perils of being associated with Hitler and his persecution of Jews);[17] *Sanctuary v. Thackrey* (1947), 189 Misc. 724, 72 N.Y.S.2d 104, *aff'd*, 273 A.D. 883, 78 N.Y.S.2d 361 (libelous *per se* to call plaintiff a Quisling, though defendants proved truth of allegation); *O'Donnell v. Philadelphia Record Co.* (1947), 356 Pa. 307, 312–13, 51 A.2d 775, 777 (defendants committed libel *per se* when they accused a news reporter to be a Naziphile in sympathy with Hitler's liquidation of Jews).[18]

Today, passions have had almost half a century to cool, and although an allegation of anti-semitism is as morally reprehensible now as it was then, the consequences of such an allegation today bear little resemblance to the harm a defamed person would have suffered in the 1940s.[19]

In light of the preceding discussion, we hold the phrase "anti-Semitic," like the other ethnically related slurs in the cases cited above, is not defamatory *per se*.

▪ Because Cohn's remarks about Rambo acting like a "horse's butt" and being "anti-Semitic" were not defamatory *per se*, Rambo was limited to an action for defamation *per quod*. He failed to allege or show the existence of a genuine issue of material fact concerning the pecuniary special damages that are the essence of a *per quod* defamation action. His attempt to recover damages only for physical and emotional injuries therefore fails, and the trial court properly entered summary judgment in favor of the defense.

## CONCLUSION

The trial court erred in dismissing Rambo's complaint. Rambo was not required to exhaust his administrative remedies. The entry of summary judgment, however,

16. Vidkun Quisling was a Norwegian politician who collaborated with the Nazi invaders and served as head of the Norwegian puppet regime, the State Council of Norway, from 1940–45. *See The American Heritage Dictionary of the English Language* 1072 (4th printing, 1970). Quisling is a synonym for "[a] traitor who serves as the puppet of the enemy occupying his country." *Id.*

17. The plaintiff in *Sweeney* was a Congressman from Ohio who was alleged in the media to have opposed the appointment of the United States Attorney for the Northern District of Ohio to the federal bench because the nominee was a naturalized Jew born in Hungary. Sweeney filed several suits, and the decision cited above, in which Judge Learned Hand concurred, was the only one, even in those trying times, to find the accusation against Sweeney to be libelous *per se*. The decision in *Life Printing & Publishing Co., Inc. v. Field* (1944), 324 Ill.App. 254, 260, 58 N.E.2d 307, 310 contains a list of the other reported decisions in Sweeney's suits.

18. The decision in *Sanctuary, supra,* for example, makes clear the validity of the idea that the defamatory nature of an utterance is to be construed in light of the times. The defendants in that case successfully raised the defense of truth, and the decision is not only a stirring defense of the United States' conduct in World War II, but is also a palpable expression of the judge's contempt for the plaintiff's beliefs.

19. The decision in *Schermerhorn v. Rosenberg* (1980), 73 A.D.2d 276, 426 N.Y.S.2d 274, does not imply a contrary conclusion. In that case, the media defendants deliberately fabricated lies about the plaintiff New York state senator, falsely attributing to him various anti-Semitic, anti-Black, and anti-Hispanic statements. They then published those lies in a general circulation newspaper in the plaintiff's senatorial district, which had a large Black population.

As a result of the fabrications, the plaintiff's daughter was assaulted, he suffered vilification by his Senate colleagues, received death threats, and required police protection. The court held this evidence was sufficient to let the question of the libellous nature of the publication go to the jury.

The nature and extent of the publication and the audience, and the circumstances surrounding the remarks, were critical to the determination of the remarks' potentially defamatory nature, and the difference between the situation in *Schermerhorn* and the present case requires no further elaboration.

was proper. Cohn's remarks about Rambo's performance as an employee were not published, and Cohn was also immune for those remarks. The other remarks were not defamatory *per se,* and Rambo failed to make out an action for defamation *per quod.*

The dismissal of Rambo's complaint is reversed. The summary judgment in favor of Cohn and the State is affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.