## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 05 2016, 9:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Phillip Gray
Westfield, Indiana

ATTORNEYS FOR APPELLEES

Jeffrey D. Hawkins
Mark D. Gerth
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Phillip Gray,

*Appellant-Plaintiff,*

v.

YMCA of Greater Indianapolis, Stacy Meyers, Greg Hiland, Christopher Butler, and Aquatics Coordinator of the Fishers YMCA,

*Appellees-Defendants.*

April 5, 2016

Court of Appeals Case No. 29A02-1510-CT-1623

Appeal from the Hamilton Superior Court

The Honorable William J. Hughes, Judge

The Honorable William P. Greenaway, Magistrate

Trial Court Cause No. 29D03-1502-CT-894

**Najam, Judge.**

## Statement of the Case

Phillip Gray appeals the trial court's dismissal of his complaint. He raises one issue on appeal, namely, whether the trial court erred in dismissing his complaint for failure to state a claim of defamation upon which relief can be granted.

We affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

On February 2, 2015, Gray filed, pro se, a lawsuit against the YMCA of Greater Indianapolis ("YMCA") and four of its employees for alleged slander and/or libel against him. Gray's complaint alleged that, in January 2014, Greg Hiland, a YMCA employee, had "verbally assaulted" him and called him a "liar" in "full view of other members and staff of the [YMCA]." Appellant's App. at 10. The complaint further alleged that Hiland had "blocked the entrance to the YMCA to verbally abuse and accuse the Plaintiff," and that Hiland had taken all these actions "in order to defame and humiliate" Gray. *Id.*

The complaint also alleged that, on July 23, 2014, Stacy Meyers, another YMCA employee, had written an e-mail to Gray in which Meyers had stated that Gray would not be permitted "to volunteer in assisting in teaching beginning swim classes because of the 'hands on nature' of teaching swimming to children." *Id.* at 11. Gray further alleged that this statement was "in effect accusing [him] of being a [c]hild [m]olester." *Id.* Gray alleged Meyers also had

informed him that he could not volunteer to work at the YMCA summer day camp "because of the interaction of adults with children." *Id*. Because Gray had never told Meyers that he was considering volunteering at the day camp, he stated he "could only conclude that his name was slandered at some of the staff meetings by Mr. Hiland and others to further harm [Gray's] reputation." *Id*.

[5]     In his complaint Gray also alleged that Christopher Butler, Operations Vice President of the YMCA, had informed Gray during a meeting that "the Fishers' YMCA Aquatics Coordinator" had communicated to Butler that Gray had "loomed over children in his speedos." *Id*. Gray's complaint alleged that, "again [this is] effectively accusing [Gray] of being a child molester." *Id*. The complaint further alleged that Butler told Gray that the same Aquatics Coordinator stated that Gray had threatened to "push people in the pool" and had actually attempted to do so. *Id*.

[6]     Gray's complaint also claimed that Butler wrote a letter to Gray in which he accused Gray of using "inappropriate language" and "making threats" as justification for suspending Gray's YMCA membership for over thirty days. *Id*. Gray claimed "this action by Mr. Butler was solely intended to discredit [Gray] and to [libel him] before other staff of the YMCA." *Id*. Gray asserted that Butler "committed [libel]" against him by "publishing falsehoods against [him]." *Id*.

[7]     Gray also alleged in his complaint that the YMCA "has done everything in its power to cover-up these unlawful actions by its employees." *Id*. He also

alleged that the individual named defendants, "[a]s agents of the YMCA . . . [,] conspired to defame the character of [Gray], making the YMCA . . . just as guilty of li[bel] and slander, in violation of Title 34 Article 15 of the Indiana Code, as the other respondents." *Id.* at 11-12. He alleged the YMCA and its named employees "entered into a conspiracy to defame" his character. *Id.* at 12.

[8] Gray's request for relief sought "just and proper relief against the Respondents, individually and collectively, in an amount that is acceptable to the Court and is acceptable under Indiana [l]aw." *Id.* Gray also requested punitive damages "at 10 times the amount of damages caused by the unlawful and intentional actions of the Respondents." *Id.*

[9] On March 23, 2015, YMCA timely filed an Answer and Affirmative Defenses. On July 14, YMCA filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. After briefing by both parties, the trial court held a hearing on the motion to dismiss and, on September 2, the Judge Pro Tempore entered an order granting YMCA's motion to dismiss. In its order, the court specifically noted that it had considered only Gray's complaint in reaching its decision. On September 17, YMCA moved the court to enter a final judgment on the order to dismiss because Gray had not filed an amended complaint within ten days of the court's order, as required under Indiana Trial Rule 12(B). On September 22, the trial court entered judgment for YMCA on its order dismissing the complaint. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

Our standard of review of an order granting a motion to dismiss is well-settled:

> A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief. *See Kitco, Inc. v. Corp. for Gen. Trade*, 706 N.E.2d 581 (Ind. Ct. App. 1999). Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred.

> A court should "accept[ ] as true the facts alleged in the complaint," *Minks v. Pina*, 709 N.E.2d 379, 381 (Ind. Ct. App. 1999), and should not only "consider the pleadings in the light most favorable to the plaintiff," but also "draw every reasonable inference in favor of [the non-moving] party." *Newman v. Deiter*, 702 N.E.2d 1093, 1097 (Ind. Ct. App. 1998).

> \* \* \*

> Under notice pleading, we review the granting of a motion to dismiss for failure to state a claim under a stringent standard, and affirm the trial court's grant of the motion only when it is "apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999).

*Trail v. Boys and Girls Club of Northwest Indiana*, 845 N.E.2d 130, 134 (Ind. 2006).

### *Defamation*

Gray alleges that YMCA and some of its employees defamed him. Our supreme court has clearly laid out the law of defamation:

> To establish a claim of defamation, a "plaintiff must prove the existence of 'a communication with defamatory imputation, malice, publication, and damages.'" *Trail . . .*, 845 N.E.2d [at] 136 . . . (quoting *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), *trans. denied*). A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (internal citation omitted). One type of defamation action, alleging defamation per se, arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct. *Id.*; *see also Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind. Ct. App. 1992), *trans. denied*; *Elliott v. Roach*, 409 N.E.2d 661, 683 (Ind. Ct. App. 1980), *trans. not sought*. In contrast, if the words used are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory per quod. *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*. In actions for defamation per se, damages are presumed, but in actions for defamation per quod, a plaintiff must prove damages. *Rambo*, 587 N.E.2d at 145-46.

*Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 186 (Ind. 2010).

[12]     For a statement to be actionable as defamation per se, it must not only carry with it one of the four defamatory imputations—criminal conduct, loathsome disease, misconduct in profession, or sexual misconduct—but it also must

> constitute a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious character can be dispensed with.  *The offensiveness of the statements cannot be determined by how the plaintiff views the statement*; the defamatory nature must be present in the nature of the words without any additional facts or circumstances to give context.

*In re Indiana Newspapers Inc.*, 963 N.E.2d 534, 549-50 (Ind. Ct. App. 2012) (emphasis added) (citations and quotations omitted).  "Whether a communication is defamatory or not is a question of law for the court, unless the communication is susceptible to either a defamatory or nondefamatory interpretation—in which case the matter may be submitted to the jury."  *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007), citing *Rambo*, 587 N.E.2d at 145.

[13]     If the statement is not defamatory per se, it may yet state a claim of defamation per quod if it alleges special damages from the defamation.  *See, e.g.*, *Agnew v. Hiatt*, 466 N.E.2d 781, 782-83 (Ind. Ct. App. 1984).  "Special damages" or "special harm" is "the loss of something having economic or pecuniary value."  *Rambo*, 587 N.E.2dat 146.

> Special harm must result from the conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation.  . . .  Loss of reputation alone is not enough to make the defamer liable under the rule stated in this Section unless it is reflected in some kind of economic or pecuniary loss.

> So too, lowered social standing and its purely social consequences are not sufficient.

Restatement (Second) of Torts: Slander Creating Liability Because of Special Harm § 575 (1977).

[14] Here, the complaint contains no facts indicating that most of the alleged defamatory statements were published. A matter is "published" for purposes of defamation if it is "communicated to a third person or persons." *Turner v. Boy Scouts of America*, 856 N.E.2d 106, 111 (Ind. Ct. App. 2006) (citing *Bals v. Verduzco*, 600 N.E.3d 1353 (Ind. 1992)). Gray's complaint does not allege any facts showing publication of the following alleged defamatory statements: (1) Meyers' statements in her e-mails to him that he could not assist in teaching swimming because of the "hands on nature" of it and could not volunteer at day camp "because of the interaction of adults and children"; and (2) Butler's statements in his letter to Gray that Gray used "inappropriate language" and "[made] threats." Appellant's App. at 11. Gray does not even allege that Meyers' statements were communicated to third persons and, while he alleges that Butler "published falsehoods" against him, he states no facts showing Butler's letter to him was ever seen by anyone other than Gray himself. "Without publication of a defamatory statement, there can be no relief granted" as to that statement. *Id.*

[15] Gray's allegation that Hiland defamed him by calling him a "liar" in "full view of other members and staff of the YMCA" states facts that, if true, show publication of Hiland's statement. Appellant's App. at 10. However, this

allegation did not state a claim of defamation per se because Gray failed to allege facts showing this statement constituted an imputation of criminal activity, a loathsome disease, misconduct in his profession, or sexual misconduct. Moreover, calling someone a "liar" is not, by itself, defamatory per se. Although the word may have a defamatory imputation, it is not, as a matter of law, "so obviously and naturally harmful that proof of [its] injurious character can be dispensed with." *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000). And Gray alleged no facts showing any economic or pecuniary loss as special harm; therefore, he has not stated a claim of defamation per quod as to Hiland's alleged statement. *See Rambo*, 587 N.E.2d 146.

[16] Finally, Gray alleges that "the Fishers' YMCA Aquatics Coordinator"[1] defamed him by communicating to Butler that Gray had "loomed over children in his speedos" and had threatened, and attempted, to "push people in the pool." Appellant's App. at 11. He alleges facts showing that both of these statements were said to a third party; therefore, they were "published" for purposes of defamation law. *Turner*, 856 N.E.2d at 111. Moreover, the statement that Gray attempted to push people into the pool could be defamation per se; this statement, on its face, accuses Gray of criminal

---

[1] Gray does not state the name of the Aquatics Coordinator because it is unknown to him, and he alleges YMCA has refused to reveal the name to him.

conduct—namely, attempted battery.[2]  Therefore, Gray has stated a claim upon which relief can be granted as to this statement.

[17]  It is less clear whether the statement that he "loomed over children in his speedo" is defamatory per se.  Although Gray claims in his complaint that this statement "effectively accus[ed him] of being a child molester," that is merely Gray's view of the statement and, as such, is not sufficient to state a claim of defamation per se.  *In re Indiana Newspapers*, 963 N.E.2d at 550.  However, we believe that this statement is susceptible to either a defamatory or nondefamatory interpretation.  On one hand, there is nothing illegal or sexually improper about standing next to people at a pool while wearing a speedo.  On the other hand, the Aquatics Coordinator allegedly stated that Gray "loomed over" children in his speedo, and this particular language[3] reasonably could be taken to mean that Gray stood over children in a frightening way while scantily clad, thus exhibiting sexually inappropriate behavior.  Because this statement is susceptible to either a defamatory or nondefamatory interpretation, it must be submitted to the trier of fact.  *Kelley*, 865 N.E.2d at 596.  Therefore, the trial court erred in dismissing this claim.

[18]  Most of the factual allegations in Gray's complaint do not allege facts supporting claims for either defamation per se or defamation per quod and

---

[2]  *See* Ind. Code § 35-42-2-1 (2015) (Battery); I.C. § 35-41-5-1 (Attempt).

[3]  Merriam-Webster's "simple definition" of "loom" as a verb is "to appear in a large, strange, or frightening form often in a sudden way."  www.merriam-webster.com/dictionary/loom.

were, therefore, properly dismissed.[4]  However, because the facts set out in Gray's complaint show that the statements allegedly made by the Aquatics Coordinator were published and may be defamatory per se, Gray's claims as to those statements should not have been dismissed.

[19]     Affirmed in part, reversed in part, and remanded for further proceedings.


Robb, J., and Crone, J., concur.

---

[4] Gray's claim that YMCA and its employees conspired to commit defamation against him also fails to state a claim upon which relief can be granted and was, therefore, properly dismissed.  "A corporation cannot conspire with an agent when that agent is acting within the scope of his authority." *Soft Water Utilities, Inc. v. LeFevre*, 308 N.E.2d 395, 399 (Ind. Ct. App. 1974).