Archie E. SIMONSON, Plaintiff-Appellant,

v.

UNITED PRESS INTERNATIONAL, INC., and The Associated Press, Inc., Defendants-Appellees.

No. 80–2708.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1981.

Decided July 16, 1981.

Richard H. Schulz, Petrie, Stocking, Meixner & Zeisig, Milwaukee, Wis., for plaintiff-appellant.

Evan J. Cutting, Baker & Hostetler, Cleveland, Ohio, Andrew O. Riteris, Michael, Best & Friedrich, Milwaukee, Wis., for defendants-appellees.

Before SWYGERT and CUMMINGS, Circuit Judges, and GRANT, Senior District Judge.*

SWYGERT, Circuit Judge.

The issue on appeal is whether the district court properly dismissed upon summary judgment plaintiff-appellant Archie E. Simonson's defamation of character suit against defendants-appellees, United Press International (UPI) and Associated Press (AP). We affirm the judgment of the district court, 500 F.Supp. 1261.

On April 10, 1978, Simonson, a former county court judge for Dane County, Wisconsin, filed a complaint against UPI and AP alleging that the wire services defamed his character and injured him in his occupation in certain of their wire service dispatches issued on May 25 and 26, 1977. The reports concerned a juvenile disposition hearing presided over by then-Judge Simonson on May 25, at which Simonson was called upon to sentence a fifteen-year-old youth, who had previously pleaded no contest to a charge of second-degree sexual assault.[1] The assault had taken place in an area high school stairwell and aroused interest and concern in the community. During the hearing, Dane County assistant district attorney Meryl Manhardt recommended the youth be placed in a juvenile facility. The following colloquy then took place between Manhardt and Simonson:

Simonson: (Y)ou are saying that I should be responsive to the community in what their needs and wishes are. Well, how responsive should I be? Should I adopt a double standard? This community is well known to be sexually permissive; look at the newspapers, look at the sex clubs, the advertisements of sex, the availability of it through your escort services, the prostitutes, they are being picked up daily. Go down State Street and the University area. I used to see girls clothed like that and I had to pay a lot of money to go into the south side of Chicago to view what I see down on State Street today. Even in open court we have people appearing—women appearing without bras and with the nipples fully exposed and they think it is smart and they sit here on the witness stand with their dresses up over the cheeks of

---

* The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Section 940.225(2), Wis.Stats. in relevant part provides as follows:

    (2) Second degree sexual assault. Whoever does any of the following is guilty of a class C felony.

    (a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence . . . .

their butts and we have this type of thing in the schools. So, is that the attitude of the community? Am I supposed to be responsive to that? Are we supposed to adopt a double standard? Is this community then exhibiting the sex in the movies, in the sex stores we now have on State Street up around in the square, in the shows? I'm talking about the bars and the taverns where it is readily available, The Dangle Lounge, The Whiskey, wherever else they do their thing; down here on Williamson Street, Ms. Brew's, and the like. It is readily available. It is really wide open and are we supposed to take an impressionable person 15 or 16 years of age who can respond to something like that and punish that person severely because they react to it normally?

What is the attitude of this community and what are their mores, what does exist? I know there is a group that has recently been attempting to clean it up. For them I think it is going to be an uphill fight because we haven't hit rock bottom yet but we will someday and then the pendulum will swing the other way and how are you going to deter acts like this absent some explanation of these influencing environmental factors. What response do you have?

Manhardt: Your Honor, with all due respect, I find your remarks about women's clothing particularly sexist.

Simonson: You bet it is. I can't go around walking exposing my genitals like they can the mammary glands.

Manhardt: You are reflecting the general theory that a woman provokes an assault and I cannot accept that idea.

Simonson: It sure raises a lot of interest in my mind from time to time.

Manhardt: We are not talking about a consensual sex act, we are not talking about anything between adults, we are not talking about shows or magazines; we are talking about a personal assault and that's admitted to in the plea of no contest that was entered.

Simonson: It is one thing to enter a plea on a charge like this and another thing to address myself to a dispositional case. It is absolutely whether it is in a criminal setting or juvenile disposition taking into consideration the circumstances surrounding the act.

Manhardt: There was an assault without consent on a 16 year old girl.

Simonson then sentenced the delinquent fifteen-year-old youth to one year at a state reformatory, suspended the sentence, and directed that the youth participate in a home community treatment program.

Anita Clark, a reporter for the *Wisconsin State Journal* who was present at the hearing, wrote an article relating Judge Simonson's comments and disposition of the delinquent youth. Based on her article, UPI and AP wrote national dispatches reporting the hearing.[2] Simonson's comments on provocative dress and sexual permissiveness and their effect on a male's sexual response, along with the relatively light sentence he imposed, received wide publicity in the news media and were met by immediate outrage in the community, which eventually led to Judge Simonson's removal from office in a recall election.

Eleven months after the hearing, Simonson filed his defamation suit against UPI and AP in the United States District Court for the Eastern District of Wisconsin, asking for $1,750,000 in damages. On March 3, 1980, the wire services filed motions for

---

**2.** Clark's newspaper article was only at the proposed-for-publication stage when AP received it on a computer printout on May 25, 1977. An edited version was published in the May 26, 1977 *Wisconsin State Journal*. The district court found "the computer printout differed from the final published article in two respects: (1) the printout did not include this phrase which was parenthetically inserted into the *State Journal* story: 'Simonson said later in the hearing that sexual assault obviously is not condoned by the community'; (2) the printout, but not the final article, characterized Simonson's comments as a 'tirade.' "

AP's two dispatches of May 25 relied entirely upon Clark's proposed article. It appears UPI's dispatch of May 26 was based on the published version of Clark's material. UPI also relied on a police investigatory report of the assault.

summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The district court on October 28, 1980 granted defendant's motions. Appellant Simonson filed a notice of appeal on November 25, 1980.

Simonson contends that the district court erred by finding the following:

1. The wire services' news dispatches were "true in substance; "
2. There is no genuine issue as to material fact of "actual malice; "
3. The wire services' news dispatches are privileged as "true and fair" accounts of a judicial proceeding under Wisconsin law; [3]
4. Wisconsin's retraction statute applies to appellees, UPI and AP, and is a condition precedent to appellant Simonson's defamation suit.[4] Simonson failed to comply with the statute.

Any of these findings would support the granting of summary judgment. Because we agree with the district court that the dispatches were "substantially true," we affirm the judgment in favor of defendants.

■ Under Wisconsin tort law, Simonson's defamation action cannot succeed unless it is shown that the alleged defamatory statements were both defamatory and false. *See, e. g., Schaefer v. State Bar of Wisconsin*, 77 Wis.2d 120, 252 N.W.2d 343 (1977). *See 3 Restatement (Second) of Torts § 581 A*, Comments a–1 at 235–37 (1977). In addition, because the district court found

Judge Simonson to be a "public official" within the *New York Times v. Sullivan*[5] doctrine, he must also prove the wire services acted with "actual malice" in writing their dispatches. To defeat a motion for summary judgment, however, Simonson only has to present, among other things, some evidence of falsity and of malice. He has failed to meet even that slight burden.

■ On appeal, Judge Simonson contends to be false only two words used in the wire services' dispatches. Both the UPI dispatch of May 26, 1977 and the AP dispatch of May 25, 1977 referred to the sexual assault in the high school as a "rape." UPI's dispatch also used the word "ruled" when referring to the manner in which Judge Simonson made his statements from the bench concerning the normal sexual responses of young males.[6] Judge Simonson challenges the use of both these words.

It is sufficient to note that "rape" as defined by common usage[7] is incorporated into second-degree sexual assault under Wisconsin law: "Sexual contact or sexual intercourse with another without consent of that person by use of threat or force."[8] The youth pled no contest to the charge of second-degree sexual assault. In addition, counsel for the youth stipulated to facts appearing in the juvenile court records, and specifically the petition for determination of status for the juvenile, which made it

3. Section 895.05(1), Wis.Stats.

4. Appellant contends that to read Section 895.-05(2), Wis.Stats., to be a condition precedent to the recovery of punitive damages would render the statute violative of both the Fourteenth Amendment and Article 2, Section 9 of the Wisconsin Constitution. The district court declined to reach this constitutional issue. We note, however, that the statute does not prevent the recovery of actual damages. The district court indicated its reliance on the other three findings as bases for granting summary judgment.

5. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

6. The AP dispatch read in relevant part as follows:

A Dane County judge in Madison indicated today a 15-year-old high school boy was reacting normally to Madison's so-called "sexual permissiveness" when he *raped* a female student last fall. (emphasis added)

The UPI dispatch read in relevant part as follows:

When a 15-year old boy *raped* a girl on a stairwell at West High School, Judge Archie Simonson *ruled*, he was reacting "normally" to prevalent sexual permissiveness and women's provocative clothing. (emphasis added)

7. Webster's Third New International Dictionary defines "rape" in pertinent part as "illicit sexual intercourse without the consent of the woman and effected by force . . . ."

8. Section 940.225(2)(a), Wis.Stats.

clear that rape had occurred.[9] The dispatches were in no manner made false by substituting the word in common usage for an exact legalism.

■ Simonson contends the use of the word "ruled" in the UPI dispatch to describe a "rhetorical question" from the bench "substantially alters the truth of the situation;" that is, he says he never "ruled" that sexual assault is a normal reaction to prevalent sexual permissiveness and women's provocative clothing. The fact remains, however, that Simonson did remark during a dispositional hearing over which he presided that:

> It is really wide open and are we supposed to take an impressionable person 15 or 16 years of age who can respond to something like that and punish that person severely because they react to it normally?

The meaning of an allegedly libelous statement is to be determined by the plain and ordinary meaning of the word. *Leuch v. Berger,* 161 Wis. 564, 570, 155 N.W. 148, 151 (1915) ("plain and popular sense"); *Dabold v. Chronicle Publishing Co.,* 107 Wis. 357, 362, 82 N.W. 639, 641 (1900) (what "the ordinary reader might well understand"). A plain and ordinary meaning of "ruled" includes statements and comments made by a judge when sitting on the bench.[10] Judge Simonson's remarks certainly fit this definition, for the purpose of the hearing was to determine the sentence for the juvenile offender. His conclusion about the normal reactions of young males made from the bench which "were relevant to the proceedings, and made at a point in the proceedings when one could reasonably conclude they affected the disposition of the case"[11] is in common usage a "ruling" by the court. UPI's use of that word was therefore accurate, and no jury could reasonably find otherwise.

The judgment of the district court is affirmed.

---

9. The record shows that intercourse occurred without the consent of the girl.

10. Webster's Third New International Dictionary's definition of "rule" includes the following: 3a: to declare authoritatively: DECIDE, DECREE, DETERMINE; specif: to require or command by judicial rule; give as a direction, order, or determination of a court.

11. *Simonson v. United Press International,* 500 F.Supp. 1261, 1266 (E.D.Wis.1980).