In the Matter of the Termination of the Parent–Child Relationship of [J.O.] a child, Appellant (Plaintiff),

and

[D.O.] and [S.H.], her parents, Appellees (Defendants).

No. 82A01–9001–JV–9.

Court of Appeals of Indiana, First District.

July 9, 1990.

Rehearing Denied Aug. 28, 1990.

Mary Jane Humphrey, Evansville, for appellant.

ROBERTSON, Judge.

This is an appeal from the denial of Vanderburgh County's petition to terminate the parental rights of D.O. to her two-year old daughter, J.O.

We affirm.

The two issues presented by Vanderburgh County in this appeal are 1) whether the trial court erred in holding that all testimony and records regarding D.O.'s mental health treatment were inadmissible under IND. CODE 16–14–1.6–8, and 2) whether the remaining evidence established grounds for termination by clear and convincing evidence.

J.O. was placed in emergency foster care several days after her birth on October 5, 1987. The record documents that D.O. was incapable of caring for her infant because hospital staff noticed that D.O. suffered from physical and mental disabilities that made the staff fearful for the welfare of the newborn infant if D.O. were to take her home. Specifically, D.O. exhibited tardive dyskinesia, a condition which, in D.O.'s case, manifested itself by D.O.'s inability to look forward while walking, instead looking up at the ceiling. Also, D.O.'s arms would flail out from her sides.

On October 14, 1987, J.O. was made a ward of the county and found to be a child in need of services (CHINS). A dispositional order issued on December 7, 1987 required D.O. to visit with J.O., follow the recommendations of the Semi–Independent Living Program, complete parenting classes, follow recommendations of vocational rehabilitation, and sign all releases deemed necessary by the welfare department to provide services to D.O. and J.O.

Several review hearings were held and J.O.'s wardship and placement were continued each time. The county welfare department filed its petition to terminate D.O.'s parental rights on June 17, 1989. The court accepted the natural father's consent to termination. On August 24, 1989, a hearing on the petition to terminate was held. In connection with the hearing, the court granted D.O.'s motion to quash certain subpoenas duces tecum directed to the keeper of records at Southwestern Indiana Mental Health Center and to the Medical Records Director at Evansville State Hospital. After hearing the evidence and taking the matter under advisement, the court denied the county welfare department's petition. From that adverse ruling, the county takes this appeal.

In order to terminate parental rights, the welfare department must show by clear and convincing evidence that:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied;

(3) termination is in the best interests of the child; and

(4) the county department has a satisfactory plan for the care and treatment of the child.

IND. CODE 31–6–5–4(c); I.C. 31–6–7–13(a); *In Re Wardship of M.H.* (1985), Ind.App., 490 N.E.2d 1119. Only the second and third prongs of this test are at issue here. The DPW proved that J.O. had been removed from the care of her parents since December 7, 1987. The county's plan for J.O. included adoption, and she is a healthy, adoptable child.

Elements two and three are implicated here where the county sought to prove that D.O.'s chances were slim of being able to care for herself and her child at any time in the near future due to her mental disabilities.

■ The records and information obtained and maintained in the course of providing mental health services to a patient are confidential, under I.C. 16–14–1.6–8(b). The patient's record is not discoverable or admissible in any legal proceeding without the consent of the patient or client. I.C. 16–14–1.6–8(f).

■ The county appears to accept that this provision would exclude D.O.'s mental health records, and any testimony from persons who obtained information in the course of providing mental health services to D.O. However, the county condemns the strict construction of this provision which induced the trial court to exclude testimony of welfare department caseworkers and mental health care providers that would indicate what welfare department services were provided to D.O. Presumably, these witnesses' testimony would have established whether there is a reasonable probability that the conditions that resulted in J.O.'s removal will be remedied. If their testimony would have divulged information respecting the mental health services received by D.O. then I.C. 16–14–1.6–8 would mandate its exclusion. On the other hand, if the evidence would merely

have revealed the services offered as part of the case plan developed by the welfare department, then the statute would not operate to exclude the evidence. Our need to speculate about what the testimony would have revealed is symptomatic of the county's failure to make a proper offer to prove.

Richard Wise, a program manager at Welborn Clinic was asked whether he had ever had a professional relationship with D.O., to which an objection was sustained. The county then proffered the following:

At this point, your Honor, as with the prior witnesses I would have an offer to prove that on the basis of the services provided by this agency, if the evidence would show that [D.O.] had been involved with services that it indicates the status of her ability to care for a child and the probability of her being able to care for a child in the future. Thank you.

Record at 108.

Robert Skinner worked for Developmental Diagnostics, a private agency contracting out its services to the Department of Mental Health. To the question whether Skinner had evaluated D.O., the court sustained D.O.'s attorney's objection. The county attorney explained that Skinner's testimony would show the "parenting abilities and the general living skills of [D.O]." Record at 119.

The testimony of Tera Ashley and John Collins, both social workers at Developmental Diagnostics, was excluded, and the county in its offer to prove cited the witnesses' information in regard to D.O.'s "status, parenting skills and services provided by the Department." Record at 133.

Each of the above witnesses' testimony was stricken on the basis of the confidentiality provision of I.C. 16–14–1.6–8(f), as a result of the same basic question: whether each witness had a "therapeutic" relationship with D.O. While the term "therapeutic" may imply mental health services in this context, the testimony may or may not have been based on information obtained in the course of providing mental health services to D.O. By the state of the record, it is impossible to determine whether the services offered D.O. were in the course of mental health treatment or were rendered as part of the welfare department's case plan. Consequently, it is impossible to determine the admissibility of their testimony.

■ The purpose of an offer to prove is to enable both the trial court and appellate court to determine the admissibility and relevance of proffered testimony. *Indianapolis Union Railway v. Walker* (1974), 162 Ind.App. 166, 318 N.E.2d 578. Mere statements of the conclusions of the person making the offer do not provide a sufficient basis upon which to make this determination. *Id.; See State ex rel. Mental Health Comm'r v. Stephens* (1981), Ind.App., 426 N.E.2d 116, 118 (Shields, J., dissenting). The county's offer to prove should have consisted of the excluded testimony itself. *Hebel v. Conrail* (1985), Ind., 475 N.E.2d 652; 3 Harvey, Indiana Practice, § 435, at 207–08.

■ The county also argues that the admitted testimony alone was sufficient to establish by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied. In the supreme court's decision in *In Re Wardship of B.C.* (1982), Ind., 441 N.E.2d 208, the court held that expert medical testimony is not the *sine qua non* of the county's case for termination of a mentally ill parent's rights. The trier of fact, even without hearing a medical expert, may conclude from other competent evidence that there exists a reasonable probability that the conditions warranting removal of the child would not be remedied. *Id.* at 211.

■ Although certain facts of *Wardship of B.C.* are strikingly similar to ours, the county is faced on appeal of this case with a ruling against termination at this time. The county is appealing from a negative judgment, and we may reverse only when the evidence is without conflict and leads unerringly to a contrary result. *Lambert v. State* (1984), Ind.App., 468 N.E.2d 1384. While there was evidence that visitation

with J.O. had been sporadic and somewhat unsuccessful, there was also evidence that D.O. had held a job, would be leaving the hospital in a few months, and hoped to take parenting classes. She had an appointment shortly after the hearing which would determine D.O.'s placement in the semi-independent living program. D.O. no longer showed signs of the dyskinesia at the time of the hearing. As we stated before, the county has not preserved a record for reversal on the exclusion of the testimony. Accordingly, we must affirm.

Judgment affirmed.

RATLIFF, C.J., and HOFFMAN, P.J., concur.