Martin **HENRICHS** and Elmer
L. Jacobsen, Appellants–
Defendants,

v.

Alfred J. **PIVARNIK**, Appellee–Plaintiff,

and

**Lake–Porter Leadership Council,
Inc., Defendant.**

No. 64A03–9002–CV–56.[1]

Court of Appeals of Indiana,
First District.

March 18, 1992.

1. This case was transferred into this office on January 29, 1992 by order of the Chief Judge.

Joseph A. Morris, Morris, Rathnau & De La Rosa, Chicago, Ill., Sheldon H. Cohan, Merrillville, for appellants-defendants.

Saul I. Ruman, David W. Holub, David M. Hamacher, Ruman, Clements & Tobin, P.C., Hammond, for appellee-plaintiff.

ROBERTSON, Judge.

Appellant–Defendant Martin Henrichs appeals the summary judgment entered against him on the issue of liability in the defamation suit filed against him by Alfred J. Pivarnik.[2] A jury trial was held on the issue of damages which resulted in a verdict against Henrichs and in favor of Pivarnik in the amounts of zero ($0.00) compensatory damages and fifteen thousand dollars ($15,000.00) punitive damages. Henrichs also challenges the award of damages. Henrichs raises four (4) issues, which we restate and consolidate into three

---

**2.** Co-defendant, Elmer L. Jacobsen, is named in the caption as an appellant. Jacobsen, like Henrichs, received an adverse punitive damage judgment in the amount of fifteen thousand dollars ($15,000.00). However, the appellant's brief and the appellant's reply brief clearly indicate that they were submitted on behalf of Henrichs alone. Co-defendant Lake–Porter Leadership Council, Inc. received an adverse punitive damage judgment in the amount of fifty thousand dollars ($50,000.00). However, the Council was not named in the caption as an appellant nor did it submit an appellant's brief. We must conclude that neither Jacobsen nor the Lake–Porter Leadership Council have participated in this appeal.

(3), none of which constitutes reversible error.

## FACTS

The facts in the light most favorable to nonmovant Henrichs indicate that on April 27, 1983, Henrichs, as editor-in-chief of a newspaper called the *Lake–Porter Leader*, published an article authored by Elmer L. Jacobsen entitled "Court Corruption in Indiana Courts" which vilified Pivarnik, then a justice on the Indiana Supreme Court, by claiming that he was connected with vice and organized crime and that he had committed several acts which would have constituted criminal abuses of the power of his judicial office when he was the judge of the Porter County Circuit Court. Eight thousand (8000) copies of the newspaper with the defamatory article were circulated.

Pivarnik filed the present lawsuit on September 12, 1983. On that date, he also served various discovery requests upon the defendants. The defendants have never responded to these discovery requests despite the trial court's order to comply.

On March 2, 1984, Pivarnik filed and served Requests for Admissions on each defendant. On September 17, 1985, the trial court gave all defendants an additional thirty (30) days to respond to the Requests for Admissions which had remained unanswered for more than 500 days. The defendants have never responded to the Requests for Admissions and the admissions became conclusively established under Ind.Trial Rule 36. With respect to Henrichs, the matters admitted are as follows:

1. Martin Henrichs was the editor-in-chief of the Lake–Porter Leader on or about April 27, 1983.

2. Martin Henrichs is and has been the editor-in-chief of the Lake–Porter Leader since April 27, 1983.

3. Martin Henrichs is a member of the Lake–Porter Leadership Council, an unincorporated association.

4. Martin Henrichs is president of Lake–Porter Leadership Council, Inc.

5. Elmer L. Jacobsen is a member of the Lake–Porter Leadership Council, an unincorporated association.

6. Elmer L. Jacobsen is a member of Lake–Porter Leadership Council, Inc.

7. Elmer L. Jacobsen was a staff writer for the Lake–Porter Leader as of April 27, 1983.

8. The Lake–Porter Leadership Council, an unincorporated association, owns and publishes the Lake–Porter Leader.

9. The Lake–Porter Leadership Council, Inc. owns and publishes the Lake–Porter Leader.

10. On or about April 27, 1983, the Lake–Porter Leadership Council and/or Lake–Porter Leadership Council, Inc. published in the Spring issue of the Lake–Porter Leader, an article entitled "Court Corruption in Indiana Courts" authored by Elmer L. Jacobsen.

11. The article "Court Corruption in Indiana Courts" contained each of the following statements:

a. 'Prior to the appointment of Alfred J. Pivarnik to the Indiana Supreme Court in 1977, I had personally submitted to each of the seven members of the Indiana Judicial Qualifications Commission a 56-page documented and sworn complaint in writing setting out, by separate specifications, the activities and conduct of Alfred J. Pivarnik of Porter County, Indiana demonstrating his lack of fitness and qualifications to sit or act as a judge of any duly authorized court, and constituting reason and ground for his removal as judge of the Porter Circuit Court.'

b. 'The inseparable ties between vice and politics have increased with rapid strides to the point where the administration of justice in the Porter Circuit Court has come under severe scrutiny.

In making these charges, complainant (hereinafter referred to as Jacobsen) emphasizes that nothing herein is intended to reflect in any way upon other judicial officers in Porter County. * * * It is Jacobsen's opinion that the superior court judges other than Judge Pivarnik,

are and have been men of high honor, capacity, and ability.'

c. 'One of the major frauds in which Judge Alfred J. Pivarnik was involved was signing on April 30, 1975 the 'clean bill of health' findings submitted by an East Chicago law firm, Given, Dawson and Cappas relative to the fraudulent 5.3 million dollar contract of November 12, 1974 between the Metro Construction and the East Chicago Board of Parks and Recreation. Pivarnik had full knowledge of the fraud when he signed the findings.'

d. 'In an effort to prevent an investigation of the facts and circumstances under which he signed the findings of April 30, 1975 in the Metro case, acting in collusion with certain members of the bar and acting contrary to law, Porter Circuit Judge Alfred J. Pivarnik violated his oath of office in several particulars including 1) unlawfully jailing his critics or driving them from the state, 2) blocking their appeals by entering an order prohibiting the court clerk from preparing records on appeal, 3) closing his court to certain litigants by directing the clerk not to receive their praecipes, pleadings or court papers, 4) breaking up a lawful picket line and suppressing free speech, 5) causing indictments to issue without probable cause, 6) intimidating witnesses to abuse of his judicial office, 7) knowingly entertaining a collusive lawsuit through a fraudulent declaratory judgment, and 8) conspiring with certain Lake County lawyers to use his judicial power to destroy the Northwest Indiana Crime Commission when it undertook to investigate and expose his judicial misconduct.'

e. 'In addition, the Indiana Judicial Qualifications Commission was informed in detail of numerous specific instances of violation of the Indiana Code of Judicial Conduct on the part of Circuit Judge Alfred J. Pivarnik.'

f. 'During that congressional campaign Mr. Crumpacker relentlessly exposed to the voters of his first district the corruption of the judicial system in Lake County and its continuing connection with the crime syndicate. His exposure included also former Porter Circuit Judge Alfred J. Pivarnik, who by then had been safely ensconced on the Indiana Supreme Court.'

12. Each of the above statements in sub-paragraphs a-f of paragraph 11 are false.

13. Each statement in sub-paragraphs a-f of paragraph 11 are defamatory.

14. Elmer L. Jacobsen knew at the time he wrote the article "Court Corruption in Indiana Courts" that each of the statements in sub-paragraphs a-f of paragraph 11 were false.

15. Martin Henrichs knew at the time the Lake–Porter Leader published the article "Court Corruption in Indiana Courts" that each of the statements in sub-paragraphs a-f of paragraph 11 were false.

16. Neither Martin Henrichs nor any of the Lake–Porter Leader staff made any effort to verify the truth or falsity of the above statements in sub-paragraph a-f of paragraph 11 prior to publication.

17. Elmer L. Jacobsen made no effort to verify the truth or falsity of the above statements in sub-paragraph a-f of paragraph 11 prior to publication.

18. On or about May 24, 1983, plaintiff Alfred J. Pivarnik did notify the Lake–Porter Leadership Council, Martin Henrichs and the Lake–Porter Leader in writing specifying the statements which plaintiff complains of as being false and defamatory.

19. No member of the Lake–Porter Leadership Council, Lake–Porter Leadership Council, Inc. or the Lake–Porter Leader made an effort to check the truth or falsity of the above statements in paragraph 11 a-f.

20. Elmer L. Jacobsen never contacted plaintiff Alfred J. Pivarnik prior to or after publication to check the truth or falsity of the above statements in paragraph 11 a-f.

21. Martin Henrichs never contacted Alfred J. Pivarnik prior to or after publication to check the truth or falsity of the above statements in paragraph 11 a-f.

22. Members of the Lake–Porter Leader staff never contacted plaintiff Alfred J. Pivarnik prior to or after publication to check the truth or falsity of the statements.

23. No retraction was ever made by the Lake–Porter Leader.

24. The above statements in sub-paragraphs a-f of paragraph 11 adversely affect plaintiff Alfred J. Pivarnik in his profession as lawyer and Justice of the Supreme Court of Indiana.

25. The article "Court Corruption in Indiana Courts" was distributed to and read by members of the general public in Lake, Porter and other counties.

26. Elmer L. Jacobsen has previously been jailed by Alfred J. Pivarnik for contempt of court.

27. The contempt of court citation of Elmer L. Jacobsen was upheld on appeal.

28. Elmer L. Jacobsen has been involved in litigation against plaintiff Alfred J. Pivarnik, his family and his attorneys in at least four (4) actions during the last eight (8) years.

29. Elmer L. Jacobsen is a member of the Fairhaven Baptist Church.

30. Martin Henrichs is a member of the Fairhaven Baptist Church.

31. Elmer L. Jacobsen is a member of the Posse Comitatus.

32. Martin Henrichs is a member of the Posse Comitatus.

33. Defendant Lake–Porter Leadership Council, Inc., Martin Henrichs and Elmer L. Jacobsen did not seek the advice of a licensed attorney prior to publication of the Spring 1983 issue of the Lake–Porter Leader with respect to possible liability for defamation.

34. Martin Henrichs relied entirely on the representation of Elmer L. Jacobsen as a source of evidence to support the truth of the allegations in paragraph 11, a-f, which were published in the Spring 1983 issue of the Lake–Porter Leader.

35. Martin Henrichs was aware at the time of the publication of the Spring 1983 issue of the Lake–Porter Leader that:

a. Elmer L. Jacobsen had previously been jailed by plaintiff Alfred J. Pivarnik for contempt of court.

b. Elmer L. Jacobsen had previously been sued by plaintiff Alfred J. Pivarnik for defamation.

c. Elmer L. Jacobsen had been involved in numerous other lawsuits as an adversary of plaintiff Alfred J. Pivarnik.

36. Martin Henrichs has sought the advice of Owen Crumpacker, a disbarred attorney, concerning the present lawsuit.

37. Elmer L. Jacobsen has sought the advice of Owen Crumpacker, a disbarred attorney, concerning the present lawsuit.

38. Elmer L. Jacobsen has filed motions and pleadings in this action which were in whole or in part prepared by or suggested by Owen Crumpacker, a disbarred attorney.

39. Martin Henrichs has filed motions and pleadings in this action which were in whole or in part prepared by or suggested by Owen Crumpacker, a disbarred attorney.

On April 15, 1988, Pivarnik filed his Motion for Summary Judgment supported by, among other materials, the above conclusively established admissions. None of the defendants submitted any materials in resistance to Pivarnik's motion. On August 24, 1988, the trial court granted summary judgment in favor of Pivarnik on the issue of liability alone and set the case for trial on the issue of damages.

The issue of damages was tried by jury on May 16, 17, and 18, 1989. The jury returned a verdict of zero dollars ($0.00) in compensatory damages against all defendants. The jury assessed punitive damages against the Lake–Porter Leadership Council, Inc., in the amount of fifty thousand dollars ($50,000.00). The jury assessed punitive damages against Henrichs and Jacobsen in the amount of fifteen thousand dollars ($15,000.00) each. The trial court entered judgments on these verdicts and Henrichs alone initiated this appeal.

## DECISION

At the outset, we shall resolve two matters about which there would appear to be little or no dispute. First, the statements upon which Pivarnik brought the present suit are defamatory per se. A communication is defamatory per se if it imputes: 1) criminal conduct; 2) a loathsome disease; 3) misconduct in a person's trade, profession, office, or occupation, or; 4) sexual misconduct. *Rambo v. Cohen* (1992), Ind.App., 587 N.E.2d 140. If a communication is defamatory per se, then damages will be presumed. *Id.*

Next, there is no dispute that Pivarnik—who was a justice on the Indiana Supreme Court at the time of the defamatory publication—was a "public official" so as to invoke the First Amendment protections afforded by the United States Supreme Court in *New York Times v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. In a defamation suit brought by a public official, the First Amendment requires the plaintiff/public official to show that in publishing the defamatory statement the defendant acted with actual malice—with knowledge that it was false or with reckless disregard of whether it was false or not. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789.[3] The actual malice element must be shown with convincing clarity. *Id.*

### I.

Whether the trial court erred by granting summary judgment in favor of Pivarnik on the issue of liability?

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories, and, where applicable, testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by the trier of fact. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party, and we must reverse the entry of summary judgment. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. However, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we must affirm the entry of summary judgment. *Id.* The moving party bears the burden of showing the absence of a factual issue and that he is entitled to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 312, 411 N.E.2d 614, 615. If there is a question of state of mind, credibility of witnesses, or weight of testimony, summary judgment should be denied. *Mayhew v. Deister* (1969), 148 Ind.App. 111, 244 N.E.2d 448. Summary judgment is not a substitute for a trial in determining factual issues, but rather, is merely procedure for applying law to facts when no controversy exists as to facts or inferences to be drawn from those facts. *Commercial Bankers*

---

**3.** We have held that it makes no sense to draw the distinction between "public" officials or figures and "private" individuals in terms of defining the constitutional guarantees of free speech and press. *AAFCO Heating & Air Conditioning Co. v. Northwest Publications, Inc.* (1975), 162 Ind.App. 671, 321 N.E.2d 580, *trans. denied, cert. denied* (1976), 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318. Accordingly, Indiana law affords the same constitutional protections to newspapers with regard to defamation actions brought by "private" figures as are required by United States Supreme Court mandate with regard to defamation actions brought by "public" officials or figures. *Id.* Therefore, even if Pivarnik were to be considered a "private" individual (and not a "public" official), he would be nevertheless be required to satisfy the *New York Times*, 376 U.S. 254, 84 S.Ct. 710, actual malice standard in the prosecution of the present defamation action; that is, even as a "private" individual, Pivarnik would be required to prove that the defamatory falsehoods were published with knowledge of their falsity or with reckless disregard of whether they were false or not. *Id.*

*Life Ins. Co. of America v. Smith* (1987), Ind.App., 516 N.E.2d 110, *trans. denied.* On a motion for summary judgment, when the evidence presented by one party establishes a lack of any genuine issue of material fact, it is incumbent upon the opposing party to set forth specific facts showing there is a genuine issue of material fact, and upon the failure of the opposing party to do so, if, based upon the materials before the trial court, the movant is entitled to judgment as a matter of law, summary judgment may be entered. *Poole v. Corwin* (1983), Ind.App., 447 N.E.2d 1150, *trans. denied.*

■ Under Trial Rule 36, the failure to respond in a timely manner to a request for admissions causes those matters to be admitted and conclusively established by operation of law. *General Motors Corporation v. Aetna Casualty & Surety Co.* (1991), Ind., 573 N.E.2d 885. Admission by operation of law under T.R. 36 of all facts material to the cause of action will entitle the plaintiff to summary judgment. *Id.* In *General Motors Corporation,* plaintiff Aetna sued GM under a products liability theory. GM's admissions, established by operation of law under T.R. 36 for GM's failure to respond to Aetna's requests for admissions, left nothing further for Aetna to prove entitling Aetna to summary judgment on its claim. *Id.*

■ Henrichs asserts that summary judgment was inappropriate as the question of "actual malice" was not established by the admissions. He urges us to conduct a de novo review of the matter. He also asserts that summary judgment was inappropriately applied as a sanction for his failure to comply with discovery requests.

We believe that the element of actual malice has been established with convincing clarity as a matter of law. As noted above, actual malice may be established by a showing that the defendant published the defamatory statement with knowledge of its falsity. *Gertz,* 418 U.S. 323, 94 S.Ct. 2997. Admission no. 15, as set out in the FACTS section above, conclusively establishes that Henrichs published the defamatory statements in question with knowledge of their falsity.

■ Our review of the summary judgment proceedings has provided Henrichs with a de novo review. As stated above, when we review a summary judgment, we are bound by the same standard as the trial court. *Ayres,* 493 N.E.2d 1229. The summary judgment rule does not allow the exercise of judicial discretion. *Grimm v. F.D. Borkholder Co., Inc.* (1983), Ind.App., 454 N.E.2d 84. The trial court may only grant (and the court of review may only affirm) summary judgment in cases satisfying the rule's criteria. *Id.* We believe that every review of a summary judgment is, in effect, a de novo review.

Henrichs has cited no authority, nor are we aware of any, that supports his assertion that the trial court's granting of summary judgment under the present circumstances constitutes a sanction for noncompliance with discovery requests. Nor do we believe that the trial court's entry of summary judgment in the present case is appropriately characterized as a sanction. As analyzed above, the present entry of summary judgment was the appropriate and inevitable result of the operation of law under the present circumstances. Therefore, we find no error.

II.

Whether the trial court erred by refusing to allow Henrichs to introduce evidence of his own economic condition?

During the trial on the issue of damages, Henrichs attempted to introduce evidence regarding his (and also defendant Jacobsen's) economic condition. Pivarnik's objection to this evidence was sustained. However, Henrichs failed to make an offer to prove. Henrichs asserts that his proffered evidence was relevant to the issue of punitive damages and the trial court's refusal to allow him to present this evidence was erroneous.

■ When an objection to a question is sustained during the direct examination of a witness, the examiner must make an offer to prove to preserve the ruling for appellate review. *Nunn v. State* (1983),

Ind., 450 N.E.2d 495. The failure to make an offer to prove results in a waiver of the asserted evidentiary error. *Id.* The purpose of an offer to prove is to enable both the trial court and the appellate court to determine the admissibility and relevance of the proffered testimony. *Matter of J.O.* (1990), Ind.App., 556 N.E.2d 948, *trans. denied.*

■ Under the present circumstances, we must conclude that Henrichs' failure to make an offer to prove results in a waiver of the asserted evidentiary error. Therefore, we find no reversible error.

■ Nevertheless, even had Henrichs properly preserved his purported error, we would not find the presence of reversible error. We are not aware of any Indiana case which addresses the particular problem posed in the present case. Here, Henrichs sought to introduce evidence of his own financial condition as a defense against a punitive damage award. Pivarnik did not attempt to introduce evidence of Henrichs' financial condition.

Our sister state of Illinois resolved the present problem long ago. For more than one-hundred years, the courts of Illinois have held that a defendant may not introduce evidence regarding his financial resources as an independent defense to a claim for punitive damages. *Warren v. LeMay* (1986), 142 Ill.App.3d 550, 96 Ill. Dec. 418, 491 N.E.2d 464. Such evidence is admissible only by way of rebuttal where a plaintiff has first offered evidence of a defendant's wealth for the purpose of enhancing a punitive damage award. *Id.*

We agree with the approach of the Illinois courts. We do not wish to endorse the practice of wrongdoers in pleading poverty to gain sympathy from the jury in order to shield themselves from punishment for their wrongdoing.

■ Pivarnik made no attempt to introduce evidence of Henrichs' wealth. No evidence of the defendant's wealth is necessary to support an award of punitive damages. *Riverside Insurance Co. v. Pedigo,* (1982), Ind.App., 430 N.E.2d 796. Therefore, we hold the trial court did not err in refusing to permit Henrichs to introduce evidence of his financial condition.

### III.

Whether the award of punitive damages can be sustained in the absence of compensatory damages?

In the present case, the jury returned a verdict of zero ($0.00) compensatory damages against all defendants. However, the jury assessed substantial punitive damages against all defendants.

■ The general rule is that a party must establish actual damages before he may recover punitive damages. *Grimes v. Jones* (1991), Ind.App., 567 N.E.2d 858; *Dotlich v. Dotlich* (1985), Ind.App., 475 N.E.2d 331, *trans. denied; Rose Acre Farms, Inc. v. Cone* (1986), Ind.App., 492 N.E.2d 61, *trans. denied.* An award of one dollar ($1.00) in nominal damages will support an award of punitive damages. *Arlington v. Colvin* (1989), Ind.App., 545 N.E.2d 572, *trans. denied.* The granting of affirmative equitable relief will also support a punitive damage award. *Grimes,* 567 N.E.2d 858. The *Grimes* court noted:

> The actual damage requirement has elicited frustration from bench and bar, one commentator referring to it as a 'teapot tempest.' Dobbs, *Remedies* § 3.9 at 210 (1973). However, the proffered rationale for the rule is persuasive: a court will not punish conduct, no matter how reprehensible, which in fact causes no legal injury.

567 N.E.2d at 859, 860. The *Grimes* court went on to note that the prerequisite for an award of punitive damages is a showing of an invasion of a legally protected interest. *Id.* at 860.

As noted above, if a communication is defamatory per se, damages will be presumed. *Rambo v. Cohen,* (1992), Ind.App., 587 N.E.2d 140. A publication which impeaches the honesty, integrity, or reputation of a public figure, or which is damaging to his professional reputation, is libelous per se and presumptive damages may be awarded without proof of special damages if the publication was made with actu-

al malice (knowledge of falsity). *Gertz,* 418 U.S. 323, 349–350, 94 S.Ct. 2997, 3011–12.

We believe that the law presumes an award of damages in cases of defamation per se in recognition that a legally protected interest of the plaintiff, his good reputation, has been invaded. Therefore, we hold that, in cases where the plaintiff has established the defendant's liability for defamation per se, the absence of compensatory damages does not preclude the recovery of punitive damages.[4]

In the present case, Pivarnik established Henrichs' liability for defamation per se. We conclude that Pivarnik has shown an invasion of a legally protected interest sufficient to support the award of punitive damages despite the jury's failure to award compensatory damages. Therefore, we find no error.

Judgment affirmed.

BAKER and STATON, JJ., concur.

---

4. Our holding is consistent with a wealth of authority from other jurisdictions. *See, general-* *ly,* Annot., 40 A.L.R.4th 11 § 10[a] (1985).