## Louis Joseph HEEB, Appellant–Plaintiff,

### v.

## Gary SMITH, Appellee–Defendant.

### No. 89A01–9209–CV–315.

Court of Appeals of Indiana, First District.

May 5, 1993.

Transfer Denied July 7, 1993.

Jon R. Pactor, Robert L. Hartley, Indianapolis, for appellant-plaintiff.

Stephen M. Terrell, Richard A. Smikle, Indianapolis, for appellee-defendant.

ROBERTSON, Judge.

Louis Joseph Heeb appeals from the summary judgment entered against him in his defamation suit against Gary Smith.

Heeb raises four (4) issues, none of which constitute reversible error.

## FACTS

The operative facts in this case are virtually undisputed. Plaintiff–Appellant Heeb was Judge of the Fayette Superior Court from 1977 through 1990. Defendant–Appellee Smith was an attorney practicing in Fayette County, Indiana and was President of the Fayette County Bar Association from 1987 through 1992. Heeb's claim of defamation is based on the following letter published in the May 3, 1990 edition of the Connersville News–Examiner:

I strongly oppose the re-election of Joe Heeb as Judge of the Superior Court. There probably are those who feel my position is based on something that Joe Heeb has done to affect me or my law practice. My opposition to Judge Heeb, however, is not caused by a personal grudge. Joe has treated me, personally, with respect and practically none of my law practice is involved in his Court. Accordingly, any statements I make are not designed to be a personal attack on Joe Heeb but are directed toward his judicial conduct.

All in all, I wish Joe no harm: yet, as an attorney, as a concerned citizen of the City/County community, and as a friend and acquaintance of many of you, I feel compelled to openly set forth some of the facts known personally by me (and many others), that lead me to conclude that Joe should not be re-elected.

In accordance with Indiana Law (set forth at Judicial Canon 2 and 3 relating to the conduct of Judges), Judges are to maintain decorum in proceedings and to be patient, courteous and respectful with those individuals who are before the Court. In the 12 Courts in which I am frequently involved, courteousness and dignity always prevail. The antics and actions, however, of Judge Heeb in conducting his Court are offensive, demeaning, discourteous, undignified and repulsive. They are an embarrassment to me as a person, as an attorney, and to the judicial system.

It is commonplace to hear Joe, with raised voice, from the bench address those before him in a smart aleck, contemptible, mocking style, and in arrogant tones. A few factual examples of his behavior include: ordering an unemployed mother of five to sell blood to pay her attorney; telling a Union County Sheriff's Deputy to keep Union County's human "garbage" from living in his (Heeb's) County; telling a defendant that he (the Judge) would like to take him out back and beat him with a board; mocking those who have a southern accent by grotesquely imitating their speech; referring antagonistically to defendants with whom he often becomes irate by saying, "Let me tell you, Pal."

If you have any doubt about what I am saying, then ask someone who has observed his Court. His verbally abusive statements, ill-tempered actions and arrogance, offend my principles and values, violate my concept of dignity, law and justice, and are degrading to those who are in the Courtroom.

I wish to further relate that, as President of the Fayette County Bar, I was asked by the overwhelming majority of the attorneys to meet with Joe and request that he change his Courtroom actions and demeanor. I met with him privately and told him of the concerns of the attorneys as well as of my personal concerns and I, respectfully, asked that he alter his ways. These requests, and the requests of others who I know have also asked him to change, have been wholly ignored and, if anything, he has become more abusive. His position is that the bulk of the people with whom he deals understand only rudeness, mocking and loud insults. I have suggested to him that there is a great difference between being judicially tough in sentencing and being demeaning, disrespectful and unjudicial. As stated, Joe did not, and has not, changed his demeanor.

For many months I have been reflecting on Joe's judicial conduct, and I have determined that I would not want a child of mine to view Joe's courtroom conduct. I would be ashamed for my children to

witness Judge Heeb's dehumanizing and insensitive behavior. Such behavior is not what I or my wife teach our children in our home, and I can no longer ignore such conduct in our County's Court system. Accordingly, I have concluded that if I remain silent and do nothing to attempt to correct this deficiency in our legal system, then I become part of the problem. Therefore, for the first time in 18 years of law practice, I have to take a position, regretfully, that is openly opposed to a judge's re-election.

It is fitting, therefore, that on May 8 Joe's actions be submitted to the voters of this county. If you find that Joe's actions, judicial temperament, and demeanor are as they should be, and as you want and expect them to be, then you should unquestionably vote for Joe so that he can continue on. On the other hand, if you feel as I do, that even the toughest justice can be carried out with dignity, courteousness, and decorum, and that those people who come before a Court should be treated as human beings, then you, like I, must vote against Joe and against his re-election by voting for his opponent, Frank Messer.

This is a tremendously important race and will require that you ask for a Republican ballot at your polling place in order for you to cast your vote for or against Judge Heeb and his actions.

It is our community and the choice is ours.

GARY E. SMITH
324 Central Avenue.

After publication of the letter, Heeb was defeated in his bid for reelection in the 1990 primary by Frank Messer, the opponent endorsed by Smith in the letter. Smith was Messer's campaign manager.

On appeal, Heeb claims he was defamed: 1) by the statement that he had ordered an indigent criminal defendant to sell her blood to pay her attorney (the "blood for money" statement); 2) by the statement that an overwhelming majority of attorneys had asked Smith to meet with Heeb to request him to change his courtroom demeanor (the "overwhelming majority statement"); 3) by the false implication A) caused by Smith's failure to identify himself in the letter as Frank Messer's campaign manager and B) that the request from the members of the Fayette County Bar Association that Smith speak to Heeb about his nonjudicial demeanor took place at a "duly called" bar association meeting ("the defamation by false implication claim"); and 4) by the statement that it was commonplace to hear Heeb, with raised voice, address those before the bench in a smart aleck, contemptible mocking style and in arrogant tones (the "tone of voice statement").

Additional facts are supplied as necessary.

## DECISION

■ At the outset, we shall resolve two matters about which there would appear to be no dispute. First, the statements upon which Heeb bases his claim are defamatory per se. A communication that imputes judicial misconduct to a judge is defamatory per se. *Henrichs v. Pivarnik* (1992), Ind. App., 588 N.E.2d 537. Next, Heeb, who was judge of the Fayette Superior Court at the time of the defamatory publication, was a "public official" so as to invoke the First Amendment protections afforded by the United States Supreme Court in *New York Times v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

■ In a defamation suit brought by a public official, the First Amendment requires the plaintiff/public official to show that in publishing the defamatory statement the defendant acted with actual malice; that is, with knowledge that the statement was false or with reckless disregard of whether it was false or not. *Henrichs*, 588 N.E.2d 537. The actual malice element must be shown by clear and convincing evidence. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

■ At this point, we must set out the well-settled standard for summary judgment. The purpose of summary judgment is to terminate litigation about which there

can be no factual dispute and which may be determined as a matter of law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. When we review a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court: we must consider all the material designated by the parties including pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by a trier of fact. Ind.Trial Rule 56(C); *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229. A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59. If no genuine issue of material fact exists, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 411 N.E.2d 614. Summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the dispute. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279. Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use. *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448, *trans. denied.* Furthermore, T.R. 56(H) provides that:

[n]o judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court.

Matters not designated by the non-moving party as genuine issues of fact cannot be relied upon on appeal. *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099.

However, the chilling effect of a defamation suit on the exercise of First Amendment rights calls for a judicial attitude more favorable to summary judgment than in the ordinary case. *Fadell v. Minneapolis Stare and Tribune Co.,* (N.D.Ind. 1976), 425 F.Supp. 1075, *affirmed,* (7th Cir. 1977), 557 F.2d 107, *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 452. Summary judgment, rather than trial on the merits, is a proper vehicle for affording constitutional protection in the proper case. *Id. See also, Fazekas v. Crain Consumer Group,* (S.D.Ind.1984), 583 F.Supp. 110; *Washington Post Co. v. Keogh* (D.C.Cir. 1966), 365 F.2d 965, *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548; *McBride v. Merrell Dow Pharmaceutical Inc.* (D.C.Cir.1983), 717 F.2d 1460. In order to survive summary judgment, a public figure plaintiff must present sufficient evidence to carry the clear and convincing evidence standard. *Anderson,* 477 U.S. 242, 106 S.Ct. 2505. Thus:

When determining if a genuine factual issue as to actual malice exists in a liable suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under [*New York Times*]. ... Thus, in ruling on a Motion for Summary Judgment, the judge must view the evidence presented through the prism of a substantive evidentiary burden.

*Id.* at 254, 106 S.Ct. at 2513.

The United States Constitution requires a false statement of fact in order to impose liability for defamation. *Hustler Magazine v. Falwell* (1988), 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41. Under the Constitution, literal truth is not required; it is sufficient if the statement is substantially true. *Masson v. New Yorker Magazine, Inc.* (1991), —— U.S. ——, 111 S.Ct. 2419,

115 L.Ed.2d 447; *Vachet v. Central Newspapers, Inc.* (7th Cir.1987), 816 F.2d 313. It is sufficient that the substance, "the gist" or "the sting" of the statement is true. *Vachet,* 816 F.2d 313. The test for determining whether a statement is substantially true is whether any inaccuracies caused the statement to produce a different effect on the audience than would have been produced had the literal truth been spoken. *AIDS Counseling and Testing Centers v. Group W Television, Inc.* (4th Cir.1990), 903 F.2d 1000.

### I.

The "Blood for Money" Statement

■ On March 5, 1989, Heeb presided at a guilty plea hearing where the following exchange took place:

Heeb: ... Are you gonna be able to pay your fines and costs that's called for in this plea agreement?

Defendant: Yes, sir.

Heeb: How are you gonna be able to do that?

Defendant: I have been donating blood plasma for the last three months.

Heeb: Good. You're bleeding for your fines and costs right?

Defendant: Yes sir.

Heeb: That—that sounds wonderful to me. Uh, cause the more you bleed the less others might have to. The fact of the matter is, if you bleed a little longer the taxpayers of this county won't have to pay for your—your lawyer. Can you bleed that out too, right?

Defendant: No sir.

Heeb: Why can't you? ...

Defendant: The last time I went they—I got a lot of scar tissue around my veins and they can only use one vein.

Heeb: Well so you bled out your fines and costs, right?

Defendant: Not quite all of it.

Heeb: And then you got one vein—they got—they got one vein—one vein to drain, right. One vein to drain.

Defendant: That's all they can hit on my arm.

Heeb: Well, you can drain out enough blood to relieve the taxpayers of this county providing you with pauper counsel too, can't you?

Defendant: It would take a little while sir.

Heeb: All you gotta do is bleed a little longer, right?

Defendant: Fifteen dollars a time.

Heeb: Well, fifteen dollars a time got you your fines and your costs, right?

Defendant: Yes sir.

Heeb: So we give you a little more time and you can bleed out the rest can't you?

Defendant: Yes sir.

Heeb asserts the "blood for money" statement in Smith's letter is false because he never formally entered an order on the docket requiring the defendant in question to sell her blood in order to pay her attorney. The Seventh Circuit case of *Simonson v. United Press International, Inc.* (7th Cir.1981), 654 F.2d 478, is instructive. In *Simonson,* a former judge sued UPI for defamation based on a newspaper story which reported that the judge "ruled" a 15–year old boy was reacting normally to prevalent sexual permissiveness and women's provocative clothing when he committed a sexual assault upon a 16–year old girl. The former judge argued that he had not formally "ruled" such a thing, but that he was merely posing a rhetorical question from the bench. The *Simonson* court noted that in defamation cases, the meaning of an allegedly libelous statement is to be determined by the plain and ordinary meaning of the word. *Id.* at 482. The court noted that Webster's Third New International Dictionary defined "rule" as:

3a: to declare authoritatively: DECIDE, DECREE, DETERMINE; specif: to require or command by judicial rule; give as a direction, *order* or determination of a court.

*Id.* at 482 n. 10 (Emphasis added). The *Simonson* court held that summary judgment was appropriately entered against the former judge because the defamatory statement was "substantially true." *Id.* at 481.

In the present case, we hold that Heebs' direction from the bench to the criminal defendant in question to constitute an "order" in the plain and ordinary sense of the word. Therefore, we hold the complained of "blood for money" statement to be substantially true and that summary judgment was appropriately entered against Heeb on this claim.

## II.

### The "Overwhelming Majority" Statement

██ Heeb asserts the following statement in Smith's letter was false:

I wish to further relate that, as president of the Fayette County Bar, I was asked by the overwhelming majority of the attorneys to meet with Joe [Heeb] and request that he change his Courtroom actions and demeanor.

Heeb concedes that eight (8) members of the bar association did make the request to Smith. However, he refers to the Indiana Legal Directory in support of his argument that eight (8) is not even a simple majority of the Fayette County Bar membership.

Heeb's reference to the Indiana Legal Directory is not well-taken. First, the Indiana Legal Directory is not of record and cannot be considered. *Shigley v. Whitlock* (1974), 160 Ind.App. 78, 310 N.E.2d 93. Second, excepts from a legal directory are hearsay and cannot be considered on summary judgment. *Sanders v. Townsend* (1991), Ind., 582 N.E.2d 355.

The facts regarding the number of practicing attorneys in Fayette County during the relevant period, as far as we are concerned, are established by affidavits in the Record. Eight (8) Fayette County attorneys submitted affidavits that they had attended an informal meeting with Smith and had requested him, as the president of the Fayette County Bar Association, to meet with Heeb and request that he modify his behavior. Following the meeting in question, Smith met with two (2) other Fayette County attorneys and the Hon. Daniel L. Pflum, Judge of the Fayette Circuit Court, who all joined in the request that Smith meet with Heeb to discuss his conduct on the bench. The record would indicate that only three attorneys practicing in Fayette County (one of whom was Heeb's uncle) did not join in the request that Smith speak to Heeb about his courtroom demeanor.

The "overwhelming majority" statement was substantially true. Therefore, we find no error.

## III.

### Defamation by False Implication

Heeb bases a claim of defamation on Smith's failure to identify himself in the letter as Frank Messer's campaign manager which he alleges created the false implication that Smith was writing on behalf of the bar association or as a concerned citizen. Moreover, Heeb bases a claim of defamation on the assertion that Smith's letter falsely implies that the request by the members of the bar association that Smith meet with Heeb took place at a "duly called" meeting of the Fayette County Bar Association.

Heeb cites *Milkovich v. Lorain Journal Co.*, (1990), 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1, for the proposition that a false opinion can be actionable if it reasonably implies false and defamatory facts. The *Milkovich* court held that simply couching a statement in terms of an opinion does not dispel the factual implications contained in the statement and insulate the declarant from defamation liability. *Id.* Thus, the *Milkovich* court held that a statement such as '[i]n my opinion Jones is a liar' is actionable in defamation. *Id.* at 18, 110 S.Ct. at 2705.

In the present case, Smith has not made any attempt to argue that any allegedly defamatory statement in the letter is not actionable because it was couched as an opinion. We cannot discern how *Milkovich* applies in the case at bar. Frankly, we are not certain that Heeb has made a cogent argument with respect to this issue.

██ The law does not generally recognize libel by omission. *Janklow v. Newsweek, Inc.*, (8th Cir.1985), 759 F.2d 644. The law is clear that for a recovery to lie,

there must be a showing that what has been omitted has made a material assertion of fact untrue. *Id.* Moreover, whether a statement is reasonably susceptible to a defamatory inference is, in the first instance, an issue of law for the court to decide. *Rambo v. Cohen* (1992), Ind.App., 587 N.E.2d 140, *trans. denied.*

 Turning first to Heeb's claim that Smith falsely implied that the request made by the members of the bar association was made at a "duly called" meeting, Smith concedes that the request or requests were made at informal meetings. However, Smith's letter is not susceptible to the interpretation attempted by Heeb. It requires quite a stretch to interpret Smith's letter as falsely implying that any meeting in question was a "duly called" meeting of the Fayette County Bar Association.

Smith's letter is clear and unambiguous. Any "false implication" in the letter does not render any material assertion of fact in the letter untrue. Moreover, whether or not Smith wrote the letter as Messer's campaign manager or whether a formal meeting was held are matters of no defamatory consequence. The matters asserted in the letter were substantially true and the "false implications" do not change the "sting" of the statements. The complained-of "false implications" were substantially true and we find no error.

### IV.

#### The "Tone of Voice" Statement

For the first time on appeal, Heeb attempts to argue that he was defamed by the following statement in Smith's letter:

> It is commonplace to hear Joe [Heeb], with raised voice, from the bench address those before him in a smart aleck, contemptible mocking style and in arrogant tones.

We note that, based on the overwhelming amount of evidence in the record supporting the truth of the statement, Heeb should not reasonably expect to establish the constitutionally required actual malice element sufficient to survive summary judgment.

 However, we need not address the merits of this issue. Matters not designated by the non-moving party as genuine issues of material fact cannot be relied upon on appeal. *Babinchak,* 598 N.E.2d 1099. Issues not raised before the trial court on a summary judgment motion cannot be argued for the first time on appeal and are waived. *Franklin Bank & Trust Co. v. Mithoefer* (1990), Ind., 563 N.E.2d 551.

Heeb did not raise any argument regarding this statement in Smith's letter before the trial court in his matters designated as genuine issues of material fact under T.R. 56 or otherwise. Therefore, this issue is waived.

Judgment affirmed.

BAKER and BARTEAU, JJ., concur.